# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 1:19-cr-559-4 |
| ) | |
| PLAINTIFF, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| DEEPAK RAHEJA, et al, ) | |
| ) | |
| DEFENDANTS. ) | |

The indictment in this matter charges defendants Deepak Raheja ("Dr. Raheja" or "Raheja"), Gregory Hayslette ("Hayslette"), Frank Mazzucco ("Mazzucco"), and Bhupinder Sawhny ("Dr. Sawhny" or "Sawhny") with conspiracy to commit healthcare fraud and related crimes involving the promotion and distribution of the drug Nuedexta. Nuedexta is a drug manufactured by Avinar Pharmaceuticals, Inc. ("Avinar") to treat Pseudo Bulbar Affect ("PBA"). (Doc. No. 1 (Indictment).)

Now before the Court are the following fully briefed motions:

- Dr. Sawhny's motion for issuance of a subpoena pursuant to Fed. R. Crim. P. 17(c) to Forest Pharmaceuticals, Inc., Edward D. Jones & Co., L.P., and Financial Industry Regulatory Authority, Inc. (Doc. No. 192 (Motion); Doc. No. 194 (Opposition); and Doc. No. 195 (Reply)); and

- Dr. Sawhny's motion for issuance of a Rule 17(c) subpoena to Dr. Michael J. Schneck. (Doc. No. 196 (Motion); Doc. No. 197 (Opposition); Doc. No. 198 (Reply).).

## I. Background

The Court has addressed the underlying facts surrounding this criminal matter in numerous opinions and orders; familiarity with these prior rulings is presumed. (*See, e.g.*, Doc. No. 135.) In order to provide context for the present motions, it sufficient to note that the indictment alleges that Mazzucco and Hayslette—while employees of Avinar—caused Drs. Raheja and Sawhny to receive unlawful kickbacks as inducements and in exchange for increasing Nuedexta prescriptions. (Doc. No. 1 at 7,[1] ¶ 24.)

The government's document and data production in this case began shortly after the indictment was filed, and it has been both voluminous and the subject of numerous status conference and defense motions for continuances. Between November 4, 2019 and February 12, 2020, the government produced over 350,000 bates-stamped pages of documents and hard drives. Additionally, on December 30, 2019, the government produced a complete database containing over six million pages of documents. Referred to as the "load file," the database containing these documents was word searchable. At the Court's direction, the government has provided defendants with a "roadmap" to assist in navigating the discovery, which included summaries and a chart that described the content of the production.

On February 16, 2022, Hayslette filed a notice of intent to enter a guilty plea. (Doc. No. 183.) On March 2, 2022, Hayslette pled guilty, pursuant to the terms of a plea agreement, to count one of the indictment, which charges a conspiracy to solicit, receive, offer and pay healthcare kickbacks, in violation of 18 U.S.C. § 371. (Minutes of Proceedings, 3/2/2022; Doc.

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

No. 187 (Plea Agreement).) The jury trial for the remaining defendants, including Sawhny, is scheduled to begin on October 17, 2022. (Doc. No. 188.) It is Dr. Sawhny's belief that Hayslette will be testifying against him as a cooperating witness for the government at trial.

## II. DISCUSSION

### A. Governing Law

The Court has commented on the law governing Rule 17(c) and a criminal defendant's use of the Court's subpoena power on numerous occasions, including in several prior decisions in this action. (*See, e.g.*, Doc. No. 177.) As this Court previously observed, Rule 17(c) permits subpoenas *duces tecum* returnable prior to trial under particularized circumstances. *United States v. Nixon*, 418 U.S. 683, 698–99, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). In *Nixon*, the Supreme Court required parties moving for a pretrial subpoena *duces tecum* in a criminal matter to show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the parties cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id*. at 699–700 (footnote omitted). The Supreme Court further required a showing of relevancy, admissibility, and specificity before issuance of a pretrial subpoena *duces tecum*. *Id*. at 700. The Supreme Court in *Nixon* stressed two fundamental characteristics of Rule 17(c) subpoenas: "(1) [they are] not intended to provide a means of discovery for criminal cases; (2) [their] chief innovation was to expedite trial by providing a time and a place before trial for the inspection of subpoenaed materials." *Id*. at 698–99 (internal citations omitted). Having laid down the standard, the

Supreme Court also noted that pretrial issuance of subpoenas *duces tecum* is "necessarily [] committed to the sound discretion of the trial court." *Id*. at 702. The decision to enforce or quash a subpoena will be disturbed on appeal only when the action was clearly arbitrary or without support in the record. *United States v. Vassar*, 346 F. App'x 17, 24 (6th Cir. 2009) (citing *United States v. Hughes*, 895 F.2d 1135, 1145 (6th Cir. 1990)).

Additionally, Rule 17(c) subpoenas must meet certain technical requirements. In *United States v. Llanez-Garcia*, 735 F.3d 483, 500 (6th Cir. 2013), the Sixth Circuit instructed district courts to interpret for themselves the contours of Rule 17(c) and determine, on a court by court basis, how they will administer and/or oversee the exercise of the Court's subpoena power. Following the decision in *Llanez-Garcia*, this Court addressed the mechanics of Rule 17(c) on numerous occasions. For example, in *United States v. Jeremy Mack*, Case No. 1:13-cr-278, Doc. No. 26 (Order), the Court determined that the language of the rule supported the conclusion that Rule 17(c) requires the requested documents to be produced in court in connection with a formal hearing, and, therefore, a subpoena that provided for document production away from the court—such as the defense attorney's office—and/or at a date and time far removed from any formal hearing in the case abused the court's subpoena powers. (*Id*. at 12.)

### B. Motion for Rule 17(c) Subpoena Relating to Co-Defendant Hayslette

In his first motion,[2] Dr. Sawhny requests leave to issue subpoenas to three private entities—Forest Pharmaceuticals, Inc. ("Forest"), Edward D. Jones & Co., L.P. ("Edward

---

[2] It should be noted that the Court has approved prior subpoena requests for Dr. Sawhny. On March 26, 2020, the Court approved Dr. Sawhny's request to issue sixteen (16) subpoenas to various pharmacies. (Non-document Order, 3/26/2020; *see* Doc. No. 74 (Motion).) While these prior subpoenas suffered from certain technical deficiencies, the Court permitted Dr. Sawhny to utilize the Court's subpoena power in that instance because this prior motion was not opposed by the government and, unlike the subpoenas at issue in the present motions, those subpoenas otherwise met *Nixon's* substantive requirements.

4

Jones"), and Financial Industry Regulatory Authority, Inc. ("FINRA")—seeking documents and other information he believes will evidence Hayslette's alleged involvement in a kickback scheme while he was employed at Forest, as well as his alleged misconduct as a financial broker with Edward Jones. (Doc. No. 192 at 5–6.) From Forest, Sawhny seeks:

> 1. Documents relating, referring or pertaining to Mr. Hayslette's employment at Forest Pharmaceuticals, Inc., including, but not limited to, documents and communications reflecting Mr. Hayslette's training, compensation, expenses, promotion, transfer, discipline, corrective action, and/or discharge.
>
> 2. Documents relating, referring or pertaining to Mr. Hayslette's involvement in the conduct as alleged in the Kroening Lawsuit, or any conduct similar to that alleged in the Kroening Lawsuit and/or Department of Justice media release dated Dec. 15, 2016 (attached hereto as Subpoena Attachment 1), while employed with Forest Pharmaceutical, Inc.

(Doc. No. 192-1 (Forest Subpoena) at 6.)

Sawhny wishes to propound similar requests upon Edward Jones. Specifically, Sawhny's proposed subpoena to Edward Jones seeks:

> 1. Documents relating, referring or pertaining to Mr. Hayslette's employment at Edward D. Jones & Co., L.P., including, but not limited to, documents and communications reflecting Mr. Hayslette's training, compensation, expenses, promotion, transfer, discipline, corrective actions, and/or discharge.
>
> 2. Documents relating, referring or pertaining to Mr. Hayslette's conduct as described in the NYSE [New York Stock Exchange] decision, or any conduct similar to that alleged or found by the New York Stock Exchange during its investigation of Mr. Hayslette while he was employed with Edward D. Jones & Co., L.P.

(Doc. No. 192-2 (Edward Jones Subpoena) at 7.)

5

FINRA is a private corporation that acts as a self-regulatory body investigating and patrolling member brokerage firms and exchange markets. From FINRA, Sawhny seeks:

> 1. Documents used to create the BrokerCheck report for Mr. Hayslette, including, but not limited to, documents and communications related to Mr. Hayslette's employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards.
>
> 2. Documents relating, referring or pertaining to Mr. Hayslette's conduct as described in the NYSE decision, or any conduct similar to that alleged or found by the New York Stock Exchange during its investigation of Mr. Hayslette while he was employed with Edward D. Jones & Co., L.P.

(Doc. No. 192-3 (FINRA Subpoena) at 7.)

In support of the subpoena directed to Forest, Dr. Sawhny cites a prior lawsuit against Forest "alleging violations of the Anti-Kickback Statute by the company and its representatives[.]" (Doc. No. 192 at 9.) Given the fact that "Hayslette was employed [by Forest] as a representative during the time period of the alleged scheme[,]" and further that "the allegations contained in the lawsuit's second amended complaint state that all Forest representatives participated in the scheme[,]" Dr. Sawhny insists that he has a good faith basis for believing that the subpoena "will produce information related to the particular nature and extent of Hayslette's involvement in the scheme." (*Id.*) The next two subpoenas are directed to Dr. Sawhny's belief that Hayslette was also involved in misconduct while employed as a broker for Edward Jones. In support, Dr. Sawhny cites a FINRA BrokerCheck Report and an NYSE Hearing Panel Decision that he believes demonstrates that Hayslette engaged in forgery and misappropriation at Edward Jones. (*Id.*)

6

1. <u>Relevancy</u>

The subpoenas requested in Dr. Sawhny's first motion fail to clear the relevancy, admissibility, and specificity hurdles.[3] As an initial matter, the Court finds that Dr. Sawhny has failed to demonstrate that the requested documents are relevant or admissible. According to Dr. Sawhny, "there is a 'sufficient likelihood' that the documents sought by the subpoenas contain information relevant to Dr. Sawhny's charge and defense[,]" and are, therefore, relevant and admissible. (Doc. No. 192 at 9.) Specifically, he argues that the requested documents "may very well reveal the details and full extent of Hayslette's forgeries and misappropriation attempts." (*Id.*)

Relevant evidence must have some capacity to make the government's charges more or less probable. Fed. R. Evid. 401. Whether or not *Hayslette* engaged in misconduct prior to any of the events charged in the present indictment has no material bearing on whether *Dr. Sawhny* engaged in fraudulent behavior in this case. Further, to the extent that Dr. Sawhny intends to use evidence of Hayslette's alleged prior wrongdoing to impeach him should he testify at trial, it is well settled that the "need for evidence to impeach witnesses is insufficient to require advance production under Rule 17(c)." *United States v. Louis Trauth Dairy, Inc.*, 162 F.R.D. 297, 300 (S.D. Ohio 1995) (Rule 17(c) subpoena power not available to compel production of documents

---

[3] Each proposed subpoena commands that the requested documents and information be produced at an unspecified date and time at defense counsel's Cleveland, Ohio office. (*See* Doc. No. 192-1 at 2; Doc. No. 192-2 at 3; Doc. No. 192-3 at 3.) In his reply brief, Dr. Sawhny concedes that the proposed subpoenas do not comply with the Court's requirement, taken from the plain language of the rule, that all Rule 17(c) subpoenas demand production of the requested materials at the courthouse and at a time that "bear[s] some relation to a scheduled hearing or the trial." *United States v. Farmer*, No. 1:14-cr-362, 2015 WL 1471965, at *3 (N.D. Ohio Mar. 31, 2015); (*see, e.g.,* Doc. No. 177 at 6; Doc. No. 135 at 8–9.) He represents that, should the Court permit him to serve subpoenas upon Forest, Edward Jones, and FINRA, he will revise "by listing the courthouse as the place for inspection, and having the time for production bear relation to a scheduled hearing." (Doc. No. 195 at 2 n.1.)

relating to antitrust litigation to show competitor engaged in prior misconduct) (citing *Nixon*, 418 U.S. 701); *see Vassar*, 346 F. App'x at 24 (subpoenas directed to government agencies concerning the criminal activities of potential government witnesses not a proper subject of Rule 17(c) because they sought general impeachment evidence) (collecting authority); *Hughes*, 895 F.2d at 1145–56 (holding that district court properly quashed Rule 17(c) subpoena seeking documents to impeach government witness). The fact that Dr. Sawhny waited until Hayslette decided to change his plea in this case, making him a likely government witness, reinforces the Court's conclusion that this evidence is merely sought for purposes of impeachment. And, even if Rule 17(c) were a proper vehicle for obtaining impeachment evidence, Fed. R. Evid. 608(b) would forbid defense counsel from impeaching a witness with extrinsic evidence (other than a criminal conviction) regarding credibility.[4] *See, e.g., United States v. Frost*, 914 F.2d 756, 767 (6th Cir. 1990).

Nevertheless, Dr. Sawhny insists that he is not requesting impeachment material, but, instead, is seeking information central to his defense. Specifically, he explains that "[e]vidence of Hayslette's forgeries and participation in the Forest scheme show[s] that [Hayslette] has the ability to manipulate Dr. Sawhny and his staff, and the constitution to forge the prior authorizations on his own and for his own benefit." (Doc. No. 195 at 3.) In essence, he hopes to show that, in this case, Hayslette "acted in accordance with" his character for misconduct

---

[4] It is clear Dr. Sawhny already has many of the documents and materials related to Hayslette's alleged prior misconduct. Attached to the present motion is FINRA's BrokerCheck Report (Doc. No. 192-4); NYSE Hearing Panel Decision (Doc. No. 192-5); Department of Justice's ("DOJ") Press Release from December 15, 2016 (Doc. No. 192-6); and the *Kroening* Lawsuit's Second Amended Complaint. (Doc. No. 192-7.) If the Court were to exercise its discretion and permit Dr. Sawhny to inquiry about this unrelated prior misconduct and Hayslette denied it, Dr. Sawhny would be "stuck" with that answer and would not be able to introduce the documents he already has (let alone the documents he now seeks) as follow up. *See United States v. Frost*, 914 F.2d 756, 767 (6th Cir. 1990) ("The district court correctly pointed out that Rule 608(b) prohibits such extrinsic evidence regarding credibility and that defense counsel are 'stuck with' the response given on cross-examination.")

without Dr. Sawhny's knowledge or consent. *Cf.* Fed. R. Evid. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.").

### 2. Admissibility

Putting to one side the question of whether prior conduct unrelated to the offenses charged in the present indictment has relevance in this case, the Court finds that Dr. Sawhny has failed to identify any rule of evidence that would allow for the admission of such "other acts" evidence. *Cf.* Fed. R. Evid. 404(b)(2) (evidence of any other crime, wrong, or acts are not admissible to show conformance to a certain character trait but is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Dr. Sawhny made no meaningful effort to explain how the requested documents and communications are admissible, and, given that it was Sawhny's burden to establish such a basis, his motion fails for this additional reason. *See United States v. Skeddle*, 178 F.R.D. 167, 168 (N.D. Ohio 1996) ("The burden is on the party issuing the subpoena to show the evidentiary nature of the requested materials with appropriate specificity, including that the materials are relevant, and admissible.") (citations, including internal citations, omitted).

But even if there were some rule of evidence under which this "other acts" evidence could find a foothold, it is unlikely that such evidence would survive a Rule 403 review.[5] Under Rule 403, a district court has "wide latitude" to prevent "harassment, prejudice, confusion of the issues . . . or interrogation that is repetitive or only marginally relevant[,]" among other things.

---

[5] Fed. R. Evid. 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

*Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Included within this extensive latitude is the ability to avoid mini-trials on extraneous or tangential matters. *See, e.g., United States v. Singh*, No. 2:14-cr-648, 2018 WL 1662483, at *5 (C.D. Cal. Apr. 2, 2018) (motion for new trial in criminal matter denied where district court limited the scope of cross-examination of a cooperating witness regarding whether witness participated in a murder-for-hire plot concerning an informant because would have led to mini-trial on tangential issue). The Court is loath to permit the trial in this matter to devolve into a series of mini-trials into alleged prior unrelated (and uncharged) conduct by Hayslette and/or his former employers or co-workers. While the Court ultimately makes no pretrial ruling on the viability of such a defense—or the admissibility of any evidence supporting such a defense—at this time, it is sufficient for purposes of ruling on Dr. Sawhny's Rule 17(c) motion to note that he has failed to satisfy his burden of showing relevance and admissibility.

    3.    <u>Specificity</u>

Turning to the specificity requirement, the Court agrees with the government that the first request of each proposed subpoena also violates *Nixon's* prohibition against overly broad fishing expeditions. Dr. Sawhny essentially seeks all documents relating to Hayslette's former employment with Forest and Edward Jones, as well as all documents relating to FINRA's investigation of Hayslette, without any effort to limit his requests to the two specific allegations that Sawhny makes against Hayslette. The proponent of a subpoena does not meet the specificity requirement of Rule 17(c) when the request seeks a general set of documentation on the basis that a subset of the documentation may contain pertinent information. *See United States v. Barnes*, No. 04-cr-186, 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008). The proponent must

limit the request to "identifiable pieces of evidence." *Id.*; *see United States v. Wittig*, 250 F.R.D. 548, 552 (D. Kan. 2008) ("[t]he specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents") (quotation marks and citation omitted). The breadth of the categories of documents requested—"promotion, transfer, discipline, corrective actions, and/or discharge"—underscores that these requests are not narrowly tailored to obtain specific documents but are designed to discover whether relevant documents exist.[6] *See, e.g., United States v. Cole*, No. 19-cr-869, 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) (Rule 17(c) subpoena seeking all employment records of cooperating witness to show witness previously engaged in misconduct with a different employer failed to meet specificity requirement).

Indeed, Dr. Sawhny's suggestion that the "subpoenaed information from FINRA and Edward Jones *may well reveal* the details and full extent" of Hayslette's alleged prior misconduct demonstrates that he is embarking on a fishing expedition to see what he might turn up. (Doc. No. 192 at 9, emphasis added.) *See Wittig*, 250 F.R.D. at 552 ("The specificity requirement . . . prevents the moving party from using the Rule 17(c) as a license for what the Supreme Court . . . decried as a fishing expedition"); *United States v. Cooper*, No. 08-20464, 2009 WL 1384145, at *7 (E.D. Mich. May 14, 2009) (noting that a subpoena request on a belief that more documents may exists amounts to an impermissible discovery request). These subpoenas represent an impermissible use of the Court's subpoena power.

---

[6] At first blush, the remaining requests appear more narrowly tailored as they reference the two allegations Dr. Sawhny levels against Hayslette regarding his prior work history. Yet even those requests stray beyond these specific allegations as they also seek "any conduct similar to" the conduct that forms the basis for his accusations against Hayslette. (*See, e.g.*, Doc. No. 192-1 at 6, Request No. 1.) It is clear that these subpoenas are being used to uncover other, yet to be identified or discovered, "other acts" evidence against Hayslette. This is precisely the type of fishing expedition that is prohibited under Rule 17(c).

11

Because the subpoenas relating to Hayslette's alleged prior conduct fail to satisfy the substantive requirements of Rule 17(c), Dr. Sawhny's first motion is DENIED.

### C. Motion for Rule 17(c) Subpoena to Government's Expert Witness

In his second motion, Dr. Sawhny requests the issuance of a subpoena to Michael J. Schneck, M.D., "an expect witness for the [g]overnment[.]" (Doc. No. 196 at 1.) The subpoena seeks from Dr. Schneck the following:

> 1. Your file relating to Dr. Sawhny and/or the Indictment.
>
> 2. Communications referring, relating, or pertaining to Dr. Sawhny and/or the Indictment.
>
> 3. Documents referring, relating or pertaining to Dr. Sawhny and/or the Indictment.
>
> 4. Communications with the Assistant U.S. Attorneys representing the United States in this matter.
>
> 5. All timesheets, invoices or other writings regarding time spent and expenses incurred by you and any other person on your behalf, at your request, or under your control in connection with your retention or rendering of any expert opinion pertaining to Dr. Sawhny and/or the Indictment.
>
> 6. All retainer agreements, fee agreements or contracts to which you are a party in connection with your retention or rendering of any expert opinion pertaining to Dr. Sawhny and/or the Indictment.
>
> 7. A list of all cases in which you have testified as an expert witness at trial or deposition, identification of the legal counsel or the client that retained your services, and a summary or other writing reflecting your prior expert testimony.
>
> 8. All Documents reflecting non-privileged Communications between you and any person or entity other than the Assistant U.S. Attorneys representing the United States regarding Dr. Sawhny and/or the Indictment that you considered or relied upon in connection with your retention or the rendering of any expert opinion.

(Doc. No. 196-1 (Schneck Subpoena) at 5–6.)

The government has objected to the issuance of the proposed subpoena to Dr. Schneck, arguing that Dr. Sawhny is attempting to circumvent the discovery rules, and that Dr. Sawhny's requests further fail to meet the substantive requirements set forth in *Nixon*.[7] (Doc. No. 197 at 1.) The Court agrees with the government on both fronts.

First, the requests contained in the proposed subpoena are overly broad and/or impermissibly vague. For example, the first request seeks Dr. Schneck's entire file "relating to Dr. Sawhny and/or the Indictment." (Doc. No. 197-1 at 5.) A blanket request for all documents in a file fails to meet the specificity requirement and suggests that it has been issued for an improper fishing expedition. *See United States v. Hills*, No. 1:16-cr-329, 2018 WL 3036195, at *3 (N.D. Ohio June 19, 2018) (citing, among authority, *United States v. Peavler*, No. 3:15-cr-14, 2017 WL 1018304, at *3 (E.D. Ky. Mar. 10, 2017)). The remaining seven requests are similarly broad, seeking all communications, documents, timesheets, and retainer agreements "pertaining to Dr. Sawhny and/or the Indictment." (Doc. No. 197 at 5–6.) "The fact that the subpoena is crafted to encompass such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence." *Barnes*, 2008 WL 9359654, at *4.

The requests also seek certain information that is either available through the rules governing criminal discovery or is strictly limited by those same rules. Expert disclosures are governed by Rule 16. The purpose of the disclosures, in part, is to provide the defendant with a "fair opportunity to test the merit of the expert's testimony through focused cross-examination."

---

[7] Unlike the subpoenas requested in the first motion, the proposed subpoena to Dr. Schneck does meet the technical requirements of requesting production at the courthouse and on a date and at a time related to a hearing in this matter; here, the production is to take place at the final pretrial conference. (*See* Doc. No. 196-1 at 2.)

13

*United States v. Vasquez*, 258 F.R.D. 68, 74 (E.D.N.Y. 2009). In pertinent part, Rule 16 provides that, at the defendant's request, the government must provide the following disclosures for each expert witness:

> a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C); the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G)(iii). Here, Request No. 7 seeks a list of all cases in which he has testified as an expert witness and a summary of any such prior expert testimony. (Doc. No. 196-1 at 5.) But much of this information is available through Rule 16. *See* Fed. R. Crim. P. 16(a)(1)(G)(iii). Because the information is available through the discovery rules, the request contravenes *Nixon's* requirement that the subpoenaed materials not be otherwise procurable in advance of trial by the exercise of due diligence. *See United States v. Bergstein*, No. 16-cr-746, 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017) (collecting cases and applying *Nixon*, 418 U.S. at 699–700).

In its response brief, the government represents that it has provided Dr. Sawhny with Rule 16 expert disclosures, including the March 2020 expert report and CV of Dr. Schneck, and all of the materials upon which Dr. Schneck based his conclusions. (Doc. No. 197 at 1–2 & n.1.) Dr. Sawhny does not suggest that the government has failed to meet its disclosure obligations under Rule 16. Instead, he complains that the March 2020 report fails to identify the source of "general observations about Nuedexta" that Dr. Schneck made, and that it fails to identify all of the articles regarding pain management that he relied upon in forming his opinions. (Doc. No. 198 at 2.) While Dr. Schneck specifically identified four articles relating to pain management

14

upon which he relied, and these articles were provided by the government, Dr. Sawhny surmises that Dr. Schneck must have relied on other articles that were not mentioned or otherwise provided in discovery. (*Id.*) He also complains that the report does not adequately explain why Dr. Schneck was only provided with the medical charts of three of the ninety patients at issue in this case. (*Id.* at 3.) He believes that the requests sought in the Rule 17(c) subpoena—including his request for all non-privileged communications between the government's attorneys and the expert—"will fill in the . . . gaps" of the government's expert discovery.[8] (*Id.*)

By his own admissions, Dr. Sawhny's Rule 17(c) requests to Dr. Schneck are designed to expand expert discovery beyond that to which he is entitled under Rule 16. "Congress did not intend 'by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms.'" *United States v. Ellis*, No. 19-369, 2021 WL 210489, at *4 (W.D. Pa. Jan. 21, 2021) (quoting *Bowman Dairy v. United States*, 341 U.S. 214, 220, 71 S. Ct. 674, 95 L. Ed. 879 (1951)). By seeking an extensive list of documents and information to which he is not entitled under Rule 16—including internal communications, timesheets, and invoices—it is clear that the present subpoena is being used to expand the scope of expert discovery beyond that supported by Rule 16. It, therefore, represents an abuse of the Court's subpoena power, and Dr. Sawhny's second motion is denied for this additional reason.

---

[8] Additionally, according to Dr. Sawhny, the requested timesheets, invoices, and fee agreements are necessary because "[t]he time Dr. Schreck spent formulating his opinions, generating the report, the fee agreements, and Dr. Schneck's prior experience as a testifying expert (requests five through seven) will provide information as to the quality and integrity of the Government's sole testifying expert witness." (Doc. No. 198 at 4.)

### III. CONCLUSION

For the foregoing reasons, Dr. Sawhny's motions for Rule 17(c) subpoenas (Doc. Nos. 192, 196) are DENIED.

**IT IS SO ORDERED.**

Dated: July 20, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**