IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19 CR 00559 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | |
| BHUPINDER SAWHNY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## DEFENDANT BHUPINDER SAWHNY'S SENTENCING MEMORANDUM

---

John F. McCaffrey (0039486)
Izaak Horstemeier-Zrnich (0101085)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216.696.3486
Facsimile:    216.592.5009
john.mccaffrey@tuckerellis.com
Izaak.horstemeier-zrnich@tuckerellis.com

*Attorneys for Defendant Bhupinder Sawhny*

# **TABLE OF CONTENTS**

**Page**

I.    STATEMENT OF RELEVANT FACTS ...................................................................... 1

    A.    Personal History of Dr. Bhupinder Sawhny ................................................. 1

    B.    Dr. Bhupinder Sawhny – Caretaker to All..................................................... 2

    C.    The Plea Agreement ......................................................................................10

II.   APPLICATION OF 18 § 3553(a) FACTORS ......................................................... 11

    A.    Nature and Circumstances of the Offense and the History
         and Characteristics of the Defendant § 3553(a)(1) ..................................... 11

    B.    The Sentence Imposed: to Reflect the Seriousness of the
         Offense, Promote Respect for the Law, and Provide Just
         Punishment – § 3553(a)(2)(A). .....................................................................13

    C.    The Sentence Imposed: to Afford General and Specific
         Deterrence – § 3553(a)(2)(B) & (C). ............................................................ 15

    D.    The Sentence Imposed: to Provide Education, Training, and
         Care for the Defendant – § 3553(a)(2)(D) .................................................. 17

    E.    Avoiding Sentencing Disparities – § 3553(a)(6) .........................................18

    F.    Providing Restitution to Victims of the Offense –
         § 3553(a)(7).................................................................................................. 21

III.  RECOMMENDED SENTENCE .............................................................................. 22

    A.    The Court Should Impose a Sentence at the Minimum of the
         Recommended Guideline Sentence............................................................. 22

IV.   CONCLUSION ........................................................................................................ 23

V.    TABLE OF EXHIBITS............................................................................................. 26

VI.   INDEX OF ADDITIONAL LETTERS OF RECOMMENDATION
      Not specifically identified in Memorandum.......................................................... 28

Defendant Bhupinder Sawhny ("Dr. Sawhny") submits the following information pursuant to 18 U.S.C. § 3553 concerning this Court's determination as to the sentence to be imposed.

## I.       STATEMENT OF RELEVANT FACTS

### A.       Personal History of Dr. Bhupinder Sawhny

Raised in Agra, India, Dr. Sawhny was one of three children born to Indira and Sharan Sawhny. (PSR at ¶ 64). Dr. Sawhny's father was an Air Force pilot traveling often. (PSR at ¶ 65). Dr. Sawhny graduated from the Air Force Central School in New Delhi, India. (PSR at ¶ 72). Dr. Sawhny completed one year of pre-medical school and graduated from the University of Jadhpur and Armed Forces Medical College. (PSR at ¶ 72). He began his medical career with an internship in neurosurgery in New Delhi, India. (Ex 1 – Letter from Jaspreet Sawhny). From that experience, Dr. Sawhny passionately pursued a practice in neurosurgery. (*Id.*).

In 1982, Dr. Sawhny completed residency at the Cleveland Clinic in neurosurgery. (PSR at ¶ 72). That same year, Dr. Sawhny became a partner in the Neurosurgical Associates, Inc., in Cleveland, Ohio until 2003. (PSR at ¶ 75). He continued work as a neurosurgeon with the Southwest Medical Group in Middleburg Heights, Ohio for eight years. In 2011, Dr. Sawhny started his own practice– The Center for Neurology, LLC – but exchanged that work to pursue an opportunity to assist the St. Vincent Medical Group in Cleveland, Ohio. (PSR at ¶ 75). While at the St. Vincent Medical Group, Dr. Sawhny served as an attending neurosurgeon for all persons, regardless of their ability to pay. (PSR at ¶ 75).

### B.     Dr. Bhupinder Sawhny – Caretaker to All

There is no line separating Dr. Sawhny "the doctor" from Dr. Sawhny "the person." Rather, Dr. Sawhny is a caretaker, "at all times of the day and night," "demonstrated [by his] extreme dedication to his patients" and also to his family. (Ex. 2 – Letter from Dr. Vasu Pandrangi). Patients, their family members, colleagues, and his own family best describe his empathy, care, and selflessness in their letters. A common theme throughout their reflections is Dr. Sawhny's role as an essential and "consummate caretaker." (Ex. 3 – Letter from Harender Arora).

#### 1.     Responses from Patients and Others who Witness His Care.

Sanjiv Kapur, a partner at the Jones Day law firm and father to one of Dr. Sawhny's patients noted that Dr. Sawhny "provided us great comfort and advice" during a time "fraught with a lot of uncertainties" involving the care of Kapur's four-year old daughter suffering from an inoperable brain tumor. (Ex. 4 – Letter from Sanjiv Kapur). He found Dr. Sawhny "particularly able to empathize as [Dr. Sawhny] himself had lost a daughter." (*Id.*).

A former patient, Ravi Marwaha, recalled Dr. Sawhny as the "Doctor who helped get me another life." (Ex. 5 – Letter from Ravi Marwaha). Marwaha was diagnosed by another physician with a seizure disorder and advised to undergo an invasive brain surgery procedure. (*Id.*). However, Marwaha consulted with Dr. Sawhny, and received his "honest and astute opinion," which spared the former patient from invasive surgery and such advice provided "a new life." (*Id.*). To Marwaha, Dr. Sawhny "was not motivated by money," but acted with "integrity, professionalism, and honesty." (*Id.*).

A witness to Dr. Sawhny's generosity towards his patients is the father of a seven-year-old diagnosed with terminal brain cancer, Tejdeep Kaur Menon.  (Ex. 6 – Letter from Tejdeep Kaur Menon).  Before seeing Dr. Sawhny,  Menon was advised that her daughter would only have one week to live. (*Id.*).  Upon advice from family, Menon contacted Dr. Sawhny, who acted as a "compassionate person with phenomenal empathy" and offered "extraordinary care." (*Id.*).  Menon and her daughter temporarily relocated to Cleveland for more than three months for her care,  during which time Dr. Sawhny and his family "visited us" and took care to help the distraught family cope. (*Id.*).  Her daughter survived beyond that original week, although eventually passed away at an early age. (*Id.*).   Nevertheless, Menon, a retired Director General of Police in Hyderabad, India – the highest rank – "observed Dr. Sawhny" and describes him as "a rare personality who combines professional with humanism.  Well-being of his patients was constantly uppermost in his mind and he took care to cope with trauma."  (*Id.*).

Another parent witnessed Dr. Sawhny provide support for their hospitalized child suffering from MIS-C in January 2021. (Ex. 7 – Letter from Taniya Kapoor).  Taniya Kapoor, niece to Dr. Sawhny, wrote, "[m]y uncle, who was already going through so much of his own turmoil, carefully coached me throughout the ordeal...and ask[ed] me to trust the establishment when I had lost all hope...[h]e saved my daughter['s] life." (*Id.*).

Inesha Singh Joneja, Dr. Sawhny's niece, wrote of Dr. Sawhny's life-saving efforts where a teenage boy fell from a skateboard and suffered life-threatening injuries. (Ex. 8 – Letter from Inesha Singh Joneja).  Ms. Joneja learned that Dr. Sawhny "saved this

young man's life and allowed him to have a future" when she ran into the boy's parents years later they relayed their gratitude toward Dr. Sawhny. (*Id.*).

Another witness to Dr. Sawhny's generosity is Jagjot Singh Kapoor who describes Dr. Sawhny's treatment of Kapoor's sister in India without charging a fee. (Ex. 9 – Letter from Jagjot Singh Kapoor). Such acts of generosity are common for Dr. Sawhny. Kapoor described hearing stories of Dr. Sawhny's "sense of humour and generosity towards his poor patients coming from India without medical insurances who could not afford to pay his fee. He will not only treat them free, but also call them over to his residence for a meal." (*Id.*).

Surinder Arora, a former patient and relative, noted that Dr. Sawhny has "consistently demonstrated integrity, good judgment, and character" such that he has become the "'go to' person in the family for both personal and professional advice." (Ex. 10 – Letter from Surinder Arora). Arora sought and received Dr. Sawhny's advice[sic] regarding a diabetic neurological problem, giving "back many facets of [Arora's] life." (*Id.*).

### 2. Colleagues reflect on Dr. Sawhny's care.

The theme of "consummate caretaker" is reflected and revered amongst Dr. Sawhny's colleagues in the medical profession. For instance, Dr. Gita Gidwani, retired OB/GYN from the Cleveland Clinic, recalled his relationship with Dr. Sawhny since their meeting in 1977. (Ex. 11 – Letter from Dr. Gita Gidwani) Dr. Gidwani described Dr. Sawhny as "always...compassionate, trustworthy, and a good physician." (*Id.*).

Similarly, Dr. Indu Malhotra, adjunct faculty member at the School of Medicine at Case Western Reserve University and physician at the Center for Global Health and

Infectious Diseases, attests that Dr. Sawhny is a "good, honest, kind, generous person of high moral character." (Ex. 12 – Letter from Dr. Indu Malhotra). Dr. Sawhny is "very courteous" and someone who takes time to explain conditions and options to the patients. (*Id.*). Dr. Malhotra provided an example of such qualities at work when a relative contacted Dr. Sawhny, and "admired [Dr. Sawhny's] honesty," and continued providing his guidance without any request for payment. (*Id.*).

This generosity continued at all hours of the day. Dr. K.C. Ravishankar, a Cleveland-based neurologist, described how Dr. Sawhny would go "to the hospital in the middle of the night for an emergency, he would always come fully and professionally dressed (including his turban!) without complaining and follow up promptly the next day." (Ex. 13 – Dr. K.C. Ravishankar). Dr. Sawhny would be "prompt with consultations, thorough with evaluations, and would persist with diligence until he found the exact source of the problem before he would venture to operate on his patients...." (*Id.*).

Dr. Vasu Pandrangi, Chairman of Southwest General Hospital System and Board member at University Hospital Health System, finds Dr. Sawhny "to be ethical all through his career at Southwest General Health Center" and "very caring towards his patients" regardless of the time of day. (Ex. 2 – Letter from Dr. Vasu Pandrangi). He notes Dr. Sawhny was "diligent, meticulous, and thoughtful" and someone who provides "outstanding neurosurgical services to the community." (*Id.*).

Dr. Kailash Kedia, former Chief of Urology at Minneapolis VA Hospital and currently practicing as a urologist in Cleveland, personally witnessed Dr. Sawhny's generosity and willingness to treat "many patients without charging any fees as they

could not afford it." (Ex. 14 – Letter from Dr. Kailash Kedia).  Dr. Sawhny "was always well respected by his peers, nurses, and all support staff." (*Id.*).

Such exemplary behavior towards others drew Dr. Sawhny to serve as a mentor and role model.  Dr. Abhishek Julka, an associate professor of Orthopedic Surgery, recalled a time early in his life when he was failing in high school.  (Ex. 15 – Dr. Abhishek Julka).  At that time, Dr. Sawhny offered to mentor the teen.  (*Id.*).  From that time on, Dr. Julka "witnessed a man that has been devoted to the service of his family and his patients like few other[s] I have known" which help influence Dr. Julka to a career in the medical profession.  (*Id.*).  Further, he saw Dr. Sawhny's kind treatment to hospital staff and notes, that "[t]here is perhaps no better judge of character of a physician than the hospital staff whom he spends his time." (*Id.*).

### 3.  Impact on the Community.

Dr. Sawhny has not only impacted the medical profession, but also the community at-large.  "Dr. Sawhny has given freely of his time and skill to support various charitable causes for the welfare of women, children, and the elderly." (Ex. 16 – Letter from Purshotam Punwani).   He is a founding life member of the Association of Indian Physicians of Northeast Ohio, and since its inception he has actively fundraised for the organization.  (Ex. 11 – Letter from Dr. Gita Gidwani).  He also serves as a trustee of Guru Nanak Foundation, a Sikh organization. (*Id.*).  In that role for over a decade, Dr. Sawhny has helped the Sikh Temple "by showing his community spirit through inclusion, education and by promoting acceptance and diversity at every turn." (Ex. 3 – Letter from Harender Arora).

### 4. Essential Caretaker and Sole Provider to His Family

Somehow, amidst the considerable time dedicated to the medical profession and patients, providing services without compensation to those in need, and his commitment to the Sikh community and other charitable foundations, Dr. Sawhny cares for those with severe ailments at home – his wife and mother. Psychologist Surinder Arora describes it perfectly - Dr. Sawhny is the "the glue for the family, threading together everyone even in grief to keep his family unit living and thriving under his guidance and love." (Ex. 10 – Letter from Surinder Arora). He is "always thinking of others before himself" and "always ready to say a kind word to help someone." (Ex. 7 – Letter from Taniya Kapoor).

Harender Arora, an engineer and financial professional that is the founding member of the Niagara Frontier Sikh Society, notes that Dr. Sawhny cared for his parents since they arrived in the United States in 1975, and that cares for the elderly and continues today to care for his 97-year-old mother. (Ex. 3 – Letter from Harender Arora). Dr. Sawhny serves as the "nucleus" for the large family, "helping, uplifting, and uniting" the family. (*Id.*).

Such a significant role in the family has not been easy for Dr. Sawhny. His daughter, at twenty-nine passed away after a failed kidney transplant. (PSR at ¶ 66). Despite that tragedy, he still "kept a grieving family together while also keeping a grueling professional schedule as the breadwinner of the family." (Ex. 17 – Letter from Rita Singh). Now, he serves as the essential caretaker for both his 97-year-old mother, Indira Sawhny, and his wife, Jaspreet Sawhny. Dr. Sawhny's mother is "not well most of the time…only feeling comfort with him." (Ex. 18 – Letter from Indira Sawhny). She

7

has lived with Dr. Sawhny for almost fifty years and suffers several ailments. Specifically, she needs the help of a walker and chairlift for stairs and suffers severe anxiety with cold sweats anytime Dr. Sawhny is away from her for any extended time. (Ex. 1 – Letter from Jaspreet Sawhny).  His mother is totally dependent upon Dr. Sawhny and his wife, Jaspreet Sawhny, for things as basic as meal preparations, cleaning, and bathroom visits.  (*Id.*).  However, that care now rests primarily upon Dr. Sawhny because his wife has been "been battling health issues," over the past ten years that require attentive and immediate care.  (Ex. 17 – Letter from Rita Singh).

As Dr. Sawhny's daughter, Achinta McDaniel describes, her mother suffers from "a debilitating illness and cannot care for herself.  He is the sole caretaker of her and his elderly mother."  (Ex. 19 – Letter from Achinta McDaniel).  His "daily routine is administering care and medication for his mother and wife, and then driving daily to his son's home, where he babysits for his grandchildren for several hours a day." (*Id.*).  This support is "rooted in caring for those who were in chronic pain, and he dedicated his life to that." (*Id.*).

At any given moment, Jaspreet ("Nilli") Sawhny could fall asleep and lose consciousness due to an auto-immune disease known as narcolepsy.  (Ex. 1 – Letter from Jaspreet Sawhny).  She describes in her letter she could collapse (and has collapsed) unconscious causing numerous fractures of her hands, teeth, and knee. (*Id.*). From this disease, she has "lost all [her] independence" because she is no longer able to drive, take care of her grandchildren, or even take out their dogs for a walk by herself. (*Id.*).  She also suffers from osteoporosis, high blood pressure, and thyroid disease and has scheduled knee replacement surgery in March 2023.  (*Id.*).  Dr. Sawhny is her "sole

caretaker" and has expressed that "she will not know how to continue our lives without Bhupinder's help and support." (*Id.*). He "cares for them around the clock." (PSR at ¶ 67).

The unwavering care for his family is best felt through the words from Dr. Sawhny's son, Jaikaran Sawhny. Jaikaran described that a brief time after the death of his sister and his grandfather, his mother was diagnosed with narcolepsy. (Ex. 20 – Letter from Jaikaran Sawhny). Additionally, his sister, Achinta Sawhny, was diagnosed with Multiple Sclerosis. (*Id.*). Jaikaran is not without his own health issues – having undergone several surgeries where he was unable to care for himself. (*Id.*). Yet, Dr. Sawhny's "inexplicable resolve to see the good in life, and the good in people, was unwavering." (*Id.*). His father is a role model, "who taught us, through his very actions, what it meant to be a positive force for change, what it is to have a truly meaningful presence on earth." (*Id.*). To this day, Dr. Sawhny continues to help his son, caring for Jaikaran's young children every day as an irreplaceable caretaker in the family. (*Id.*).

### 5.    Remorse and Acceptance of Responsibility

As demonstrated by the detailed letters from those that know Dr. Sawhny best, his unlawful conduct in this case was totally out of character. The decisions he made have caused Dr. Sawhny great anguish. He has spent several years punishing himself for what he has done and the toll it has taken on his family. As one of his colleagues explained, "his son moved to Cleveland, Ohio with his family...to help his father" and Dr. Sawhny has been deeply impacted by their whole proceeding both "mentally and physically." (Ex. 12 – Letter from Dr. Indu Malhotra). Dr. Sawhny has "never complained about the process, said anything unkind about anyone or shrugged

responsibilities in any way" nor has he "said anything negative about anyone or the US Justice System." (Ex. 17 – Letter from Rita Singh; Ex. 14 – Letter from Dr. Kailash Kedia; *see also* Ex. 21 – Letter from Anuradha Singh ("Even when his own life was in turmoil, he stood tall and strong for me and my family."); Ex. 22 – Letter from Pekha Singh-Donovan ("He has never made any comments critical of the investigation, trial, or process."); Ex. 23 – Letter from Jay Prasad ("He has shown me nothing but unconditional love and empathy from the second I met him, and continues to do so no matter how much he is going through.")). Rather, as his own words detail, "I turned a blind eye when I should have stopped it from happening." (PSR at ¶ 43). "The regret and remorse I feel is immeasurable for allowing these events to hurt those I have spent my professional career in trying to help." (PSR at ¶ 43). The very same sentiments are evident by those around him. Specifically, his son noted "I know that my father is truly repentant for what he has done, and that he has had these three years to deeply reflect and learn from his mistake." (Ex. 20 – Letter from Jaikaran Sawhny). These statements present a sincere recognition of his unlawful conduct, the desire to continue his pursuit of a law-abiding life, and intention to fulfill the restitution obligation that remains.

### C.    The Plea Agreement

On September 18, 2019, the USAO returned an indictment against Dr. Sawhny and several codefendants. (Doc. No. 260). Throughout the pendency of this case, Dr. Sawhny remained on bond adhering to the pretrial conditions imposed by this Court. (PSR at ¶ 11). On October 5, 2022, Dr. Sawhny acknowledged his unlawful conduct and accepted responsibility. He pled to a single conspiracy count and agreed to pay full

restitution to Medicare and Medicaid in the total amount of $40,787.43 plus interest. (PSR at ¶ ¶ 81, 92).

## II.     APPLICATION OF 18 § 3553(a) FACTORS

Set forth below are the various 18 U.S.C. § 3553(a) sentencing factors, and a discussion of their application to Dr. Sawhny and the offense conduct. Each factor is to be affirmatively considered by the Court in determining the sentence to be imposed. *See United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006); *see also United States v. Herrara-Zuniga*, 571 F.3d 568, 585 (6th Cir. 2009) ("the sentencing court must make an individualized assessment of the appropriate sentence based on the facts presented" and "the unique circumstances of each case."). Dr. Sawhny does not seek to justify or excuse his conduct. He acknowledges that he committed the offense exhibiting the use of exceptionally poor judgment. He recognizes that his unlawful conduct has and will continue to have profound consequences for his patients, his family, and his livelihood. As a consequence of his actions, he has voluntarily agreed to the permanent surrender of his certificate to practice medicine and surgery on January 23, 2023. (Ex. 24 –Surrender of Certificate to Practice Medicine and Surgery).

### A.     Nature and Circumstances of the Offense and the History and Characteristics of the Defendant § 3553(a)(1)

Dr. Sawhny's own personal history and characteristics, as well as those of the offense in question, are set forth above and in his Acceptance of Responsibility Statement. (*See* PSR at ¶ 43). However, Dr. Sawhny's age at the time he engaged in the offense conduct is also pertinent factor in determining the appropriate sentence within the Guidelines-recommended range. *See United States v. Ward*, 814 F. Supp. 23, 24 (E.D. Va. 1993) (in fashioning a sentence, the court considered that defendant did not

commit his first offense until age 49). As the *Ward* explained, "the length of time a person refrains from the commission of crimes, which is invariably tied to a person's age, is a factor that is critical to a court's determination of the sentence it should impose." *Id.* at 24. Here, Dr. Sawhny will be seventy-three (74) years old when he is sentenced for his first and only offense.

Additionally, the inherently non-violent nature of Dr. Sawhny's conduct, combined with his current age of seventy-three (74) further supports the conclusion that he is not a danger to the community to warrant incarceration beyond that specifically contemplated by the Plea Agreement. *See Varner v. Brown*, 393 F. App'x 479 (9th Cir. 2010) ("Varner is now 53 years old, and his age further militates in favor of finding that he does not pose a current danger to the public.").

The Sentencing Reform Act also requires the sentencing guidelines to consider specific offender characteristics.   One such characteristic may include whether his sentence "will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family." *Id.* at 463 (providing commentary to §5H1.6).   Such loss of caretaking or financial support "is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family." *Id.*  While Dr. Sawhny is not advocating for any additional departures beyond those agreed upon in the plea agreement, considerations for his family's well-being – both health and financial – may be acknowledged when fashioning a non-incarceration sentence. *Id.* at 459.

Dr. Sawhny sincerely regrets appearing before this Court in connection with this matter, and at sentencing, will speak directly to the Court about this and other issues

relevant to the Court's determination of an appropriate sentence. "The task of discerning sincerity lies squarely with the district judge, who observes first-hand the words as they are communicated live." *United States v. Stern*, 590 F. Supp. 2d 945, 955 (N.D. Ohio 2008 (O'Malley, J.)) (quoting *United States v. McIntosh*, 198 F.3d 995, 1001 (7th Cir. 2000)).

### B. The Sentence Imposed: to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment – § 3553(a)(2)(A).

Dr. Sawhny acknowledges the seriousness of his conduct.  At the same time, the offense involved was non-violent in nature.  Former Northern District of Ohio Judge Kathleen O'Malley once observed, "Respect for the law is promoted by punishments that are *fair*, however, not those that simply punish for punishment's sake." *Stern*, 590 F. Supp. 2d at 957 (emphasis original, citation omitted); *see also United States v. Olhovsky*, 562 F.3d 530, 546-53 (3d Cir. 2009) ("it is not severe punishment that promotes respect for the law, it is *appropriate* punishment") (emphasis in original). Additionally, Dr. Sawhny's conduct was neither motivated by nor resulted in drug abuse or drug-related offenses.

This Court, citing Nobel Prize winning economist Gary Becker's seminal article on crime and punishment, has recognized that Professor Becker recommends "more emphasis on fines—and less on incarceration—for many white-collar or financial offenses." *United States v. Ciccolini,* 750 F. Supp. 2d 850, 860-61 (N.D. Ohio 2010) (Gwin, J.), *vacated* 491 Fed App'x 529 (6th Cir. 2012) (vacated due to improper application of the Victim and Witness Protection Act).  Specifically, the Court agreed with "and found persuasive" Professor Becker's observation that "in financial crimes the

incarceration of the specific offender is less important than providing a disincentive to future offenders through financial penalties." *Id.* at 861. Thus, this Court found in *Ciccolini* that "imposing a financial penalty in the current case, rather than prison time, will adequately deter future financial crime." *Id.*

Another court in the Sixth Circuit similarly found that "a term of 46 to 57 months is greater than necessary to reflect the seriousness of the offense" and instead imposed a sentence of 60 months probation. *See United States v. Cernik,* No. 07-20215, 2008 WL 2940854, at *9 (E.D. Mich. July 25, 2008). The *Cernik* court recognized that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Id.,* citing *Gall v. United States,* 552 U.S. 38, 46 (2007); *see also* Richard A. Posner, Optimal Sentences for White—Collar Criminals, 17 Am. Crim. L. Rev. 409, 410, 418 (1980) (positing that white-collar criminals are more effectively punished by severe monetary penalties than by imprisonment, citing Gary Becker, *Crime and Punishment: An Economic Approach,* 76 J. Pol. Econ. 169 (1968)).

Additionally, pursuant to 18 U.S.C. § 3559(a)(4), a violation of 18 U.S.C. § 371 is a Class D felony. Unlike Class A and B felonies, incarceration is not mandatory for a Class D felony. *See* 18 U.S.C. § 3561(a)(1). This provides a strong inference of Congressional intent that not every Class D offender should receive a sentence of incarceration. Moreover, Congress has stated that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society,"

14

and that "in cases of nonviolent and nonserious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See Sentencing Reform Act of 1984* Pub. L. No. 98-473 § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note). Thus, the law allows this Court to exercise its substantial discretion to impose a sentence that includes the full range of sentencing options.

Like the defendant in *United States v. Myers*, "[t]here is no danger that this Defendant will commit another crime in the future. He is of no harm to his community and poses no future threat." 353 F. Supp. 2d 1026, 1031 (S.D. Iowa 2005). Each non-incarceration alternative adequately protects the public, deters Dr. Sawhny from any future offense conduct, and will not demean the seriousness of the offenses he admits to committing while providing a just punishment.

**C.  The Sentence Imposed: to Afford General and Specific Deterrence – § 3553(a)(2)(B) & (C).**

Dr. Sawhny is unlikely to become a recidivist. This is especially so given his current age, education, and the nature of the crime. *See United States v.* Hodges, No. 07 Cr. 706, 2009 WL 36231, at *8 (E.D.N.Y. Feb. 12, 2009) (noting that "post-*Booker*, courts have observed that recidivism is markedly lower for older defendants"); *United States v. Nellum*, No. 04-CR-30, 2005 WL 300073, at *3 (N.D. Ind. Feb 3, 2005) (concluding that recidivism drastically declines with a defendant's age); *see also* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 28 (May 2004) (illustrating through Exhibit 9 that recidivism rate for Criminal History Category I offenders under

the age of 21 at sentencing is 29.5%, but only 6.2 % for persons over age of 50 at the time
of sentencing, with that percentage decreasing as the person gets older) (available at
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-
publications/2004/200405_Recidivism_Criminal_History.pdf) (last visited on January
12, 2023) [hereinafter, *Measuring Recidivism*].

Dr. Sawhny's likelihood to recidivate is substantially decreased based on his level
of education. *See Measuring Recidivism*¸ at p 12 ("[o]ffenders with less than a high
school education are most likely to recidivate (31.4%), followed by offenders with a high
school education (19.3%), offenders with some college education (18.0%), and offenders
with college degrees (8.8%)."). Thus, his high level of education provides another
consideration of deterrence.

There is little risk that Dr. Sawhny will commit another crime in the future. Here,
Dr. Sawhny's conduct has been significantly punished through acceptance of
responsibility and plea to a felony offense. *See United States v. Marshall,* 870 F. Supp.
2d 489, 495 (N.D. Ohio 2012) ("An individual with a low risk of recidivism does not
need a lengthy incarceration for the protection of the public."); *United States v. Stern,*
590 F. Supp. 945, 958 (N.D. Ohio 2008) (imposing a below-Guidelines' sentence based
in part on low level risk of recidivism is appropriate); *United States v. Smith,* 275 F.
App'x 184, 188 (4th Cir. 2008) (per curiam) (finding a below Guidelines sentence
appropriate in part because of the defendant's "low risk of recidivism"); *United States v.
Martin,* 520 F.3d 87, 90 (1st Cir. 2008) (same); *United States v. Myers,* 353 F. Supp. 2d
1026, 1031 (S.D. Iowa 2005) (sentence of three months probation, rather than the
Guideline range of 20 to 30 months imprisonment, was appropriate given nature of

defendant's actions because "[h]e is of no harm to his community and poses no additional threat."). Furthermore, Dr. Sawhny's likelihood of recidivism is significantly diminished where he has voluntarily surrendered his certificate to practice medicine and surgery. (Ex. 24 –Surrender of Certificate to Practice Medicine and Surgery). Outside the thirteen-month period underlying the offence conduct, Dr. Sawhny lived a law-abiding life into his seventies, and until then, had been committed to helping the sick and infirm. It is difficult to reconcile these criminal actions with the principles of empathy, care, and selflessness that have defined him. However, his involvement in this crime has brought strife in both his professional and home life, and one in which he has openly acknowledged. Thus, Dr. Sawhny's sentence should therefore reflect the minimal risk of recidivism.

### D. The Sentence Imposed: to Provide Education, Training, and Care for the Defendant – § 3553(a)(2)(D)

Section 3553(a)(2)(D) directs the Court to consider a sentence that provides Dr. Sawhny with the necessary "medical care" or other "treatment in the most effective manner." The Sentencing Reform Act promoted the identical goal in a non-custodial setting by "reject[ing] imprisonment as a means of promoting rehabilitation." *Mistretta v. United States*, 488 U.S. 361, 367 (1989); *see also Tapia v. United States*, 131 S. Ct. 2382, 2384 (2011).

Dr. Sawhny has his own health issues. (PSR at ¶ 68). Specifically, he has an elevated PSA, an enlarged prostate, a nodule on his right lung discovered in October 2022, receives steroid injections in his knee and hip, and has difficulty walking long distances and sitting on the floor. (*Id.*). Based on Dr. Sawhny's medical issues, a

sentence other than imprisonment would allow Dr. Sawhny to receive continued care for his medical issues. *See, e.g., Rita v. United States,* 551 U.S. 338, 364-65 (2007) (Stevens, J., concurring) ("Matters such as . . . medical conditions . . . are not ordinarily considered under the Guidelines [but are] matters that § 3553(a) authorizes the sentencing judge to consider."); *United States v. Young,* No. 1:09-cr-252, 2010 WL 502754 (E.D. Mich. Feb. 5, 2010) (downward departure from recommended Guideline range of 87-108 months to sentence of home confinement based in part on defendant's medical issues); *United States v. Mood,* 741 F. Supp. 2d 821 (E.D. Mich. 2010) (downward departure from recommended Guideline range of 33 to 41 months to sentence of home confinement based in part on defendant's poor health).

### E.  Avoiding Sentencing Disparities – § 3553(a)(6)

In ensuring against unwarranted sentencing disparities, the Court should take care to avoid any potential nationwide disparities. *See also United States v. Frazier*, No. 12-3887, 2013 WL 6224032, at *7 (6th Cir. Dec. 2, 2013) ("[I]t is a national disparity, not a disparity between particular defendants that must be avoided.").  Particularly helpful in this regard is sentencing data compiled and made available by the U.S. Sentencing Commission, which other judges in this district have examined in assessing the need to avoid sentencing disparities. *See, e.g., United States v. Smith*, No. 1:06-CR-00394, 2009 WL 249714, at *5 n.1 (N.D. Ohio Feb. 2, 2009) (Aldrich, J.) ("[T]he court finds the statistics to be helpful in providing a rough sketch of sentencing norms and averages.").  During the Fiscal Year 2021, the federal courts sentenced a total 5,153 individuals in which a primary guideline was § 2B1.1  *See* U.S. Sentencing Commission, *Final Data Report – 3rd Quarter Release, Fiscal Year 2020*, at p. 18, Table 11 (available

18

at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly

sentencingupdates/USSC_Quarter_Report_3rd_FY20.pdf (last accessed January 19,

2023).  The average sentence length was under twenty-four (24) months. *Id.* at p. 29,

Figure 6.  Courts only imposed prison sentences for 41.1% of individuals that committed

2B1.1 crimes within Criminal History Category I in Zone C.  *See* U.S. Sentencing

Commission, *Interactive Data Analyzer*,

https://ida.ussc.gov/analytics/saw.dll?Dashboard (last accessed January 16, 2023).  Of

that group, only 15.1% of individuals over the age of 60 were sentenced to prison. *Id.*

This data demonstrates that numerous federal courts have imposed alternative

sentences to the Guidelines using their *post-Booker* discretion, particularly in

circumstances comparable to Dr. Sawhny's case.

Additionally, looking at specific cases helps to "present the district court with

cases in which defendants with similar conduct received lower sentences" to support a

non-incarceration sentence.  *United States v. Halliday*, 672 F.3d 462, 474 (7th Cir.

2012).  A review of other cases with higher total offense levels in similar cases in the

Sixth District may be instructive:

- ***United States v. Deshpande*, No. 2:19-cr-00073, ECF 36, ECF 41 (Apr. 20, 2021 S.D. Ohio):** Judge Watson sentenced Deshpade to one (1) day jail and twelve (12) months of home detention for convictions involving total offense levels of 14 and 16. He also was ordered to pay restitution of $117,124.88.  Deshpade was convicted of unlawful distribution of controlled substances and false statements for his unlawful conduct during his tenure at a pain management clinic where he pre-signed prescriptions distributed by his office staff,  billed for office visits provided by unqualified staff, and billed for the services provided by another using his own provider number.

- ***United States v. Henry,*** **No. 2:20-cr-00157, ECF 105, 113 (June 17, 2022 S.D. Ohio):** Henry pled guilty to one count of conspiracy to distribute controlled substances and one count of violating the anti-kickback statute.  He prescribed opioids beyond the usual course of medical practice and received kickbacks from a speaker's program that marketed fentanyl-based sprays.  There, Judge Marbley imposed  one day of incarceration with three years of supervised release in a matter involving a total offense level of 16.

- ***United States v. Georges,*** **No. 2:20-cr-00157, ECF 84, ECF 97 (Mar. 9, 2022 S.D. Ohio):** Georges worked a pharmaceutical representative and salesperson that bribed a doctor to prescribe her company's narcotics.   Government argued the total offense level was 20.  Judge Marbly sentenced Georges to sixty (60) months probation.

- ***United States v. Ciamacco,*** **No. 2:20-cr-00100, ECF 28, ECF 31 (Aug. 19, 2022 S.D. Ohio):**  The Southern District sentenced Ciamacco to thirty-six (36) months of probation and restitution of $264,240.53. Ciamacco plead guilty to an Information charging Conspiracy to Unlawfully Distribute Controlled Substances and Health Care Fraud. She faced an advisory sentencing guideline of 24-30 months with an advisory sentencing guideline calculation of 17 for her actions of prescribing narcotics, including fentanyl.

Such non-incarceration sentences are consistent with many other fraud-related

cases across the country:

- ***United States v. Pearlman,*** **No. 3:17-cr-00027, ECF 175, 184 (Dec. 30, 2020 D. Conn.):** The Court imposed three years of probation and ordered restitution in the amount of $1,609,041 for his involvement in a kickback scheme.  Pearlman worked as a drug company manager for a company that utilized speaker programs to sell fentanyl-based sprays.  His total offense level was 21.

- ***United States v. Levine,*** **No. 3:17-cr-00147, ECF 46, 57 (July 1, 2019 D. Conn.):** The Court placed Levine on five (5) years probation and ordered restitution in the approximate amount of $3,200,000 for her involvement in a kickback scheme.  Levine also worked for the drug company as a salesperson that utilized speaker programs to sell fentanyl-based sprays.  Her total offense level was 21 even after considering her assistance to authorities and pleading by Information.

- ***United States v. Alfonso***, **No. 3:15-cr-00147, ECF 54, 62 (Dec. 23, 2019 D. Conn.)**: Alfonso received three (3) years probation and ordered restitution in the approximate amount of $2,546,501.64. Alfonso pled guilty to a one-count Information charging Receipt of Kickback in Relation to a Federal Healthcare Program where she worked as an Advanced Practice Registered Nurse writing prescriptions for a cancer pain-management drug in return for payments that were falsely claimed to be educational speaking fees. Her total offense level was 23.

- ***United States v. Baird***, **No. 3:18-cr-00018, ECF 71, 74 (Dec. 1, 2021 W.D. Penn.)**: Court sentenced Baird to five (5) years probation, including two (2) years of home detention with an order of restitution of $567,609.36. Baird pled guilty to an illegal kickback conspiracy whereby he would receive cash payments in exchange for referring patients to a lab for drug testing services. His total offense level was 21.

- ***United States v. Risher***, **No. CR 2:10-cr-00089, ECF 48 (August 24, 2011 S.D. Ga.):** Court imposed a sentence of five (5) years probation for Conspiracy to Commit Health Care Fraud where there was a total offense level of 12. Risher billed Medicare for devices that were not provided to patients and would steal their identifying information to submit fraudulent claims to Medicare. *See U.S. Attorney's Office Press Release, available at* https://archives.fbi.gov/archives/atlanta/press-releases/2010/at100610a.htm (last accessed January 19, 2023)

- ***United States v. Girardi***, **No. 3:19-cr-00012, ECF 38, 41 (Feb. 4, 2020 W.D. Penn.)**: Court sentenced Girardi to five (5) years' probation and six (6) months' home confinement in a health care fraud case. Girardi submitted fraudulent claims to a healthcare company for Oxycodone and Hydrocodone prescriptions. His total offense level of 6.

### F. Providing Restitution to Victims of the Offense – § 3553(a)(7)

Dr. Sawhny fully intends to make full restitution for his offenses, as required by 18 U.S.C. § 3663(a)(3). (Plea Agr. at ¶ 5). This involves the payment of $40,707.43 plus interest to Medicare and Medicaid. (PSR at ¶ 92.)

## III.    RECOMMENDED SENTENCE

### A.    The Court Should Impose a Sentence at the Minimum of the Recommended Guideline Sentence

The seriousness of Dr. Sawhny's offense is not undermined by a non-incarceration sentence.  As the Guidelines themselves explain, "the definite prospect of prison, even though the term may be short, will serve as a significant deterrent . . . ." U.S.S.G. Ch. 1, Pt. A, Subpart 1, § 4(d).  Moreover, courts have recognized that imprisonment has acute significance for individuals like Dr. Sawhny who have never been confined before.  *See, e.g., United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from re-offending); *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration); *see also United States v. Anderson*, 365 F. Supp. 2d 67, 69 (D. ME. 2005) (finding that both general and specific deterrence were satisfied by a split sentence).

The seriousness of the recommended sentence may be underscored through the Court's imposition of a period of supervised release. Supervised release can be a severe punishment, is hugely restrictive of liberty, constitutes a highly effective weapon in deterring crime, and is amply retributive. The Supreme Court in *Gall* agreed with United States District Judge Pratt that probation (or its functional equivalent, supervised release) is a "'substantial restriction of freedom,'" 128 S. Ct. at 595, stating:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.

22

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer.

*Id.* at 595-96 (footnote omitted). Such an order to impose a day of incarceration and supervised could therefore be appropriate in this case.

## IV.    CONCLUSION

The conduct to which Dr. Sawhny has pled does not encompass the entirety of his life. Considered as a whole, Dr. Sawhny's life has been a life of compassion, care, and dedication to his patients and family. Dr. Sawhny is deeply remorseful for what he did, and the consequences of those actions will remain with him forever. He desires to make amends for his conduct and hopes his acceptance of responsibility statement demonstrates his sincerity. By accepting responsibility for his actions and the making the referenced restitution, Dr. Sawhny is demonstrating how to be honest about one's misdeeds, how to accept responsibility for them, and how to properly make amends. Furthermore, Dr. Sawhny lost his ability to continue practice medicine – even in a *pro bono* capacity – by voluntarily surrendering his certificate to practice medicine and surgery. Such an act is a substantial consequence for his unlawful conduct that will

further protect the public.   Lastly, the outpouring of support that Dr. Sawhny received through the letters from those who know him best – his family and friends – and those that he has impacted the most – patients and colleagues - should be considered and reflected in the sentence given.

<div style="margin-left: 40%;">

Respectfully submitted,

*s/ John F. McCaffrey*
John F. McCaffrey (0039486)
Izaak Horstemeier-Zrnich (0101085)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:   216.696.3486
Facsimile:   216.592.5009
john.mccaffrey@tuckerellis.com
Izaak.horstemeierzrnich@tuckerellis.com

*Attorneys for Defendant Bhupinder Sawhny*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2023, a copy of the foregoing *Defendant Bhupinder Sawhny's Sentencing Memorandum* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ *John F. McCaffrey*
John F. McCaffrey (0039486)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:   216.696.3486
Facsimile:   216.592.5009
john.mccaffrey@tuckerellis.com

*One of the Attorneys for Defendant
Bhupinder Sawhny*

## V.    TABLE OF EXHIBITS

**Page**

**Exhibit 1** – Letter from Jaspreet Sawhny ..................................................1, 8

**Exhibit 2** – Letter from Dr. Vasu Pandrangi .............................................2, 5

**Exhibit 3** – Letter from Harender Arora ................................................... 2, 6

**Exhibit 4** – Letter from Sanjiv Kapur ........................................................ 2

**Exhibit 5** – Letter from Ravi Marwaha ...................................................... 2

**Exhibit 6** – Letter from Tejdeep Kaur Menon............................................. 3

**Exhibit 7** – Letter from Taniya Kapoor .................................................3, 7

**Exhibit 8** – Letter from Inesha Singh Joneja ............................................ 3

**Exhibit 9** – Letter from Jagjot Singh Kapoor............................................ 4

**Exhibit 10** – Letter from Surinder Arora ...............................................4, 7

**Exhibit 11** – Letter from Dr. Gita Gidwani ............................................ 4, 6

**Exhibit 12** – Letter from Indu Malhotra ...............................................5, 9

**Exhibit 13** – Letter from Dr. K.C. Ravishankar .......................................5

**Exhibit 14** – Letter from Dr. Kailash Kedia .........................................6, 10

**Exhibit 15** – Letter from Dr. Abhishek Julka .......................................... 6

**Exhibit 16** – Letter from Purshotam Punwani ......................................... 6

**Exhibit 17** – Letter from Rita Singh ....................................................8, 10

**Exhibit 18** – Letter from Indira Sawhny ..................................................7

**Exhibit 19** – Letter from Achinta McDaniel ............................................ 8

**Exhibit 20** – Letter from Jaikaran Sawhny ..........................................9, 10

**Exhibit 21** – Letter from Anuradha Singh ............................................10

**Exhibit 22** – Letter from Pekha Singh-Donovan ......................................10

## TABLE OF EXHIBITS (CONTINUED)

**Page**

**Exhibit 23** – Letter from Jay Prasad ............................................................10

**Exhibit 24** – Surrender of Certificate to Practice Medicine and Surgery ................ 11, 17

## VI. INDEX OF ADDITIONAL LETTERS OF RECOMMENDATION (Not specifically identified in Memorandum)

1. Letter from Onkar Kanwar (Friend)

2. Letter from Ratanjit Sondhe (Friend)

3. Letter from Binisha Suri (Nephew)

4. Letter from Anu Sawhny (Niece)

5. Letter from Hem Suri (Nephew)

6. Letter from Vandana Marwaha (Previous Patient)

7. Letter from Gupreet Singh (Brother-in-law)

8. Letter from Vijay Khosla (Friend)

9. Letter from Ishita Chadda (Cousin)

10. Letter from Pamella Sawhny (Sister)

11. Letter from Earl McDaniel (Son-in-law)

12. Letter from Roshini Sawhny (Daughter-in-law)

13. Letter from Srinath Prasad Rajavasireddi (Friend)

14. Letter from Jaspreet Joneja (Colleague & Family)

15. Letter from Saiba Singh (Niece)

16. Letter from Pekhna Singh-Donovan (Niece)

17. Letter from Anu Singh (Sister-in-law)

18. Vinod Nagpal (Friend)

19. Rajnish Kapoor (Nephew)

5858637.2

Index Letter 1


APOLLO
TYRES LTD

**ONKAR KANWAR**
Chairman & Managing Director

Apollo Tyres Ltd
7 Institutional Area
Sector 32
Gurgaon 122001, India

+91 124 2383002
apollotyres.com

January 2, 2023

Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

Dear Judge Lioi,

This is to put on record my relationship with Dr. Bhupinder Sawhny and my views and knowledge of him as a person.

I first met him over 50 years ago, as I married into his extended family. I can recall from those early days of always thinking him to be a generous and kind individual, of good character and sound common sense. On multiple occasions I sought his counsel with various challenges I faced in my life, and he was always forthcoming with advice that was sound, helpful, and invariably morally correct.

When I visited the United States for my own cardiac surgery, I was able to see first-hand his interactions with his patients and their affection for him. He would always lend them a patient ear, and while I cannot comment on the quality of his medical advice, I do know that for them he was beyond just a doctor, but a friend, philosopher, and guide. He also helped me immensely in my own medical situation, with introductions to other doctors, and with his own practical advice and guidance.

Your Honor, I am proud of my association with Dr. Sawhny and am happy to personally vouch for his character.

Yours sincerely,

Onkar Kanwar
Onkar Kanwar




Index Letter 2

January 2, 2023

Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

Dear Judge Lioi,

I have had the honor of knowing Dr. Bhupinder Sawhny for over 40 years as a close friend, neurosurgeon, and community leader who has always been there for not only me and my family, but everyone in the Indian community and the community at large. He has always been considered by not just our family but most community members as a first level of defense when we were in need of clarity, organization and emotional, financial, and medical support.

When our Sikh community needed guidance, insight, and level-headed management for our Sikh Temple, he was not only a founding member and trustee, but led our community in its most difficult and challenging year as the Temple's Board Chairman and personal support and consultant to each member. Any time a family member of our community fell ill, he offered his support and services free of charge, which amounted to saving untold anxiety and suffering.

Whenever I personally had health emergencies or major surgeries, Dr. Sawhny was always there for me. In 1990, when I had open-heart surgery, he was personally present at my hospital bedside helping me psychologically and emotionally in addition to providing his expert medical eye on every aspect of my treatment. My family would never have handled this trauma without his nurturing moral and emotional support and handholding.

Three years ago, when I had a stroke, Dr. Sawhny was the first person present at 1 am at my hospital bedside to ensure that all medical treatments were conducted properly. As a general practice, the first person my wife Dolly contacts in any health emergency is Dr. Sawhny.

Not only our family but many members of our society consider Dr. Sawhny as their first line of defense in any medical and social challenges. He is known throughout the community for extreme generosity with his resources, expertise, and time.

I stepped into Dr. Sawhny's formidable shoes as Chairman of the Board 20-some years ago (from which I just retired this past December due to health challenges) as his practice became very busy and he was unable to devote enough involvement with the Temple.

Between the years of 2000 and 2003, Dr. Sawhny oversaw the renovation of our new Sikh Temple in Richfield, Ohio. All the challenges of new construction, its design, long-term financial stability, and making the institution free of politics and drama were handled under his dependable guidance, honesty, clear-sighted vision, and selfless leadership.

Dr. Sawhny has a 93-year-old mother who lives with he and his wife, Nili. Both his mother and Nili require constant attention as they have acute health challenges and need constant support.

Neither Nili nor his mother drive and are completely dependent on Dr. Sawhny to handle all medical and daily needs.

This court case has already played havoc with the entire family emotionally, physically, and financially since he has been unable to practice for almost a year. Although Dr. Sawhny is upholding a strong front to continue to provide strength to his family in this time of adversity, this case has shaken him to his core in spite of his exemplary morals and ethics, straightforwardness, honesty, and uncompromising integrity as a friend, surgeon, and community member. I am extremely sorry that such an exemplary and honorable member of our Sikh community has become a victim of such circumstances commonly practiced by so many reputable physicians.

I most humbly request, your honor, that Dr. Sawhny's sentencing be kept to the absolute minimum and very specifically, that he not be incarcerated as that would definitely have a very deleterious effect on he and his family in all respects. He is an upright, honest, and integrous member of our community caught in a situation he most likely never intended to be a part of.

Most respectfully yours,

*Ratanjit*

Ratanjit S. Sondhe
216-392-9777

Index Letter 3

**From:** Bini Suri <munusawhny@gmail.com>
**Sent:** Saturday, January 7, 2023 3:18 AM
**To:** McCaffrey, John F.
**Subject:** Letter of support for Bhupinder Sawhny

<<< EXTERNAL EMAIL >>>

Dear Judge Lioi,

I am writing this letter in support of my Uncle, Dr. Bhupinder Sawhny whom I have had the privilege of knowing and loving for the last forty two years. He is like a second father to me who I hold in high esteem because of three things; honesty, kindness and dedication to his family and profession.

His generosity and empathy is what my family experienced first hand when he shared his home with us during the early years of my childhood. Even though I was very young at the time, the bond we share as adults now makes me even more grateful for all the sacrifices he made and continues to make when it comes to building relationships. I take his guidance and learn from his wisdom even today. His home is where extended family gatherings happen because of his huge heart and warmth.

Throughout my visits to Cleveland I remember how remarkably dedicated and passionate he was as a neurosurgeon. He never complained about the hours spent away from his family because he loved what he did. More than that, he was passionate about helping others through his work because that just comes naturally to him. He wanted to make a positive difference to society and was fortunate to be in a position to do so. He worked hard, was disciplined and never took his profession for granted.

I have personally called him several times over the years for health advice and whether it's 2pm or 2am he is as

1

calm as a cucumber and always willing to listen. This past summer, I was traveling back to the U.S. from India with my eight year old who developed severe diarrhea and a high fever in the plane. Our long journey of fifteen hours had only begun. Several times I asked the cabin crew to call for a doctor on board but they refused as the captain said he didn't want to wake up the entire plane by making an announcement for something he did not consider an emergency. I felt helpless and to say the least, extremely upset. I knew that the only medical advice I could get was from Dr. Sawhny. It didn't matter that it was 1:30am in Cleveland. He immediately got on WhatsApp and went through all my daughters' symptoms with me. He was my angel and guided me throughout my challenging journey.

I have immense gratitude towards him and feel lucky to have him in my life.

These are the members of society that we need; the ones who not only have the doctorate degrees but the stamp of kindness and willingness to help ingrained in their DNA. Losing Dr. Sawhny as a medical practitioner would be a huge loss to the community. Empathy and patience are his invaluable assets.

These last few years have been a setback in terms of how difficult it's been for him and his family to endure one of the most difficult times they've been through. My uncle is the head of the family and for good cause. Seeing him live through this investigation has severely impacted the health and mental stability of his family members. My grandmother, who lives with them has suffered from anxiety multiple times. I've seen my aunt go through depression time and time again. Yet, there is faith. Faith that the positive difference he made throughout his career as a noble man will serve him well.

I firmly believe Dr. Sawhny should not receive a sentence of incarceration of any kind. He is a strong believer that truth always wins in the end and having witnessed his integrity first hand, I am urging you to exercise leniency in his sentencing.

Sincerely,
Binisha Suri

2

| From: | Anu Sawhny <anshu.sawhny@gmail.com> |
|---|---|
| Sent: | Saturday, January 7, 2023 1:53 PM |
| To: | McCaffrey, John F. |
| Subject: | Letter of Support |

<<< EXTERNAL EMAIL >>>

Judge Sara Lioi
John F. Seilberling Federal Building & U.S.
Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308

Dear Judge Sara Lioi,

My name is Anushilla Sawhny and I am Bhupinder Sawhny's niece. I have known my Uncle since the day I was born, which would be +44 years, and have the fondest memories of him throughout my childhood into adulthood. Always considered my uncle as my second father, and continue to hold him to the highest regard. I have listed in detail examples that clearly indicate the nature of my Uncle, these encompass his character, empathy, and above all honesty.

In the late 80's my family ( My parents and my sibling) all lived under one roof with Dr. Sawhny and his family. He welcomed us with open arms to stay with him, as we left India and came to the United States. Such warmth and hospitality is how I would describe my memories. Each day he would come home from work, he would always be smiling and till today I have never heard him say " I am tired", we ( his 3 kids and my sister and myself ) would all stand in line as he would give us Rides on his legs and swing us up and down !! It was such a blast 😊 . We were 5 of us all 2 years apart age wise. He loved his work, his patients and above all his family. Dr. Sawhny and his wife Nilli not only welcomed us to live with them, but also his parents ( my Paternal Grandparents) to live with them too. It was a happy household and talking about life, work, happiness and sadness was just something we all did as one.

As the years went by, my parents decided that we will be moving back to India. I was 12 years old. I was afraid, and only knew the life I had in Dr. Sawhnys house, with my cousins, my grandparents. Thinking of moving to a different house, let alone a different country was something I could not get my head around. I clearly remember standing in his room, and he took me aside and asked me one on one.. " Anushilla, will you be happy moving or would you like to live here with us ?" It is your decision and whatever you want to do I will support you ". I will never forget that. It was about me and my feelings, not my parents, not anyone else. It gave me so much strength reassurance that he would always be there for me if needed. It switched my mindset completely and I was able to embrace our families move well.  I was not wrong. Till today Dr. Sawhny is there not only for me, but for really got to know my Uncle as an adult.

Fast forward 10 plus years, I moved back to Cleveland after college and  I became extremely close to his eldest Daughter, who passed away a few years after my move. That was devastating beyond words. A wound that will never heal. Did my Uncle drown in sorrow- no he got right back up and started painting the most amazing paintings I have ever seen. He put his pain towards a creative path and kept going. He went back to work after grieving and as always had a smile on his

1

face when he came home. I asked him one day.. " How do you stay so positive inspite of what life throws at you" He said- " I am like my father, he taught me. I did not understand, and probed again. My Uncle ( Dr. Sawhny) said that when his father lost his voice, and was paralyzed from his entire left side, he kept going. He overcame his challenges'stayed positive and happy. Worked hard at this physical therapy and was able to play cards and drive eventually. That he told me was survival.

As I have grown, my relationship with my uncle has grown as well. Dr. Sawhny always established his own relationship with each of us.

As you can read above, all my examples come from the most innocent child when I was young, to when I grew up. The man, Dr. Sawhny is the same. He has always been honest, shown empathy and kindness towards others, and above all given his 1000 % at his job. This whole situation has brought us all to tears and shock. I pray that Judge Lioi grant him mercy in sentencing. I firmly believe with all my heart he is a very honest and kind man, and should not receive a sentence of incarceration of any kind.

Sent from Mail for Windows

Index Letter 5



SGV

January 7, 2023

Judge Sara Lioi
John F. Seilberling Federal Building & U.S.
Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308

Dear Judge Sara Lioi:

I am writing this letter of reference for Dr. Bhupinder Sawhny whom I have had the pleasure of knowing since April 29, 2006.

I clearly remember the date I first met Dr. Sawhny because it was the day I got married to his niece. Neither my in-laws nor my parents could not attend the wedding and Dr. Sawhny was essentially the missing father figure for both of us on that day. Not only did he help coordinate our small wedding ceremony but also filled a huge vacuum for both me and my wife as the elder of the family that we both were missing.

Since that day, I have organically developed considerably admiration and respect for Dr. Sawhny, and he is easily my favorite person from the Sawhny clan (I hope my in-laws do not read this!). Not only have I depended on his sound advice on both personal and professional fronts during challenging times but also seen him being this warm, protective and caring patriarch of the whole extended family in the US, including those of us who married into the Sawhny family.

I am a first-generation immigrant and so are several others who are part of our extended family that is related to Dr. Sawhny here in the US. Many of us did not have any support system for us in the US, and during our relatively inexperienced years of 20s, 30s and even into our 40s, we relied on Dr. Sawhny for his sound advice, mentorship and guidance as we went about setting up roots in the country and establishing ourselves and navigating life, in general. Just the knowledge that he was always there for us at the drop of a hat was invaluable source of strength and peace of mind as we navigated our journeys over the last so many years.

I currently run a community-oriented venture capital firm with hundreds of members from across the globe, including many from the Cleveland, Akron and Columbus areas etc. Most of these members are prominent members of their respective communities – prominent physicians, successful entrepreneurs and technology professionals. As they would learn about my connection to Cleveland (I am in San Diego) and my relationship with Dr. Sawhny through my wife, many would confirm their trust in investing behind us and in our funds because of their high admiration for Dr. Sawhny overall character and his huge contributions to the Cleveland community. Many shared, unsolicited, that Dr. Sawhny was one of the first Indian physicians to arrive at The Clinic, helped create the support system for the first-

1

generation India immigrants, including young physicians, and was also heavily involved in the charity efforts for the wider Cleveland community. Their respect for and trust in Dr. Sawhny, many-a-times, translated into their support for me and our investment firm. I mention to highlight the highest regard that Dr. Sawhny has been held in by not only his immediate family but also most others who had first-hand insights into his huge contribution to the lives of countless patients and young professionals, and society in general.

The last several years have been extremely difficult for Dr. Sawhny and his family. I have seen him become a shell of himself and seen the disastrous toll that this case has taken on the health of his 95+ year old mother and his wife. This is beyond the severe financial duress that the family has undergone (know this as all the cousins etc. had offered to pool money to pay for at-home care for their old grandmother as Dr. Sawhny was hard-pressed for financial resources). Despite all the hardships, I have not heard Dr. Sawhny complain once about the judicial process nor wavered in his faith re: the truth prevailing. He had and continues to have the highest regard for and belief in the fairness of the system.

Dr. Sawhny loved helping patients (I had seen him working weekends, dropping everything, including important family functions, and rushing back to help them), and not being able to practice has left a huge vacuum in his life. Therefore, as I conclude this letter, I hope you consider Dr. Sawhny's decades of good service to his patients and his contributions to his family as well as his community to not only exercise leniency in his sentencing by avoiding any incarceration but also possibly, allowing him to practice what he loves as a volunteer surgeon.

Best regards,

Hem Suri

2

Index Letter 6

**From:** Vandana Marwaha <marwaha.vandana@gmail.com>
**Sent:** Monday, January 9, 2023 2:21 PM
**To:** McCaffrey, John F.
**Subject:** Dr. Bhupinder Sawhney

<<< EXTERNAL EMAIL >>>

Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron , Ohio 44308-1813

Dear Judge Lioi,
I went to see Dr. Sawhney in October 2002, because I was continuing to have severe vertigo despite CT scans which revealed nothing abnormal. These spells were causing a major disruption in my profession of teaching. I was even afraid to drive.
Upon doing a neurological exam Dr. Sawhney suggested an MRI just to rule out anything that the CT scan did not catch. That was a good call. The next day I received a phone call saying that I had an acoustic neuroma, a tumor on my hearing nerve. Initial option was to undergo an invasive brain surgery. However, after further consultations with Dr. Sawhney the plan of treatment was decided upon. Invasive neuro surgery has countless side effects and recovery could be from 3-6 months. We concurred that gamma -knife surgery with concentrated cobalt rays to zap the tumor was the right thing to do. Dt. Sawhney's understanding of my diagnosis and walking me through treatment options was very informative and supportive. He explained the procedure and followed up for two to three years afterwards. He has always kept the well-being of his patients as a top priority. His professionalism and integrity came through at every appointment.
I was blessed to meet and know his family over the years. They are the noblest, gentlest and compassionate human beings. The loss of his young daughter was a devastating blow to all the family members. Dr. Sawhney stood as a valiant warrior protecting his wife, elderly parents, and the two younger children. His stoic demeanor was almost heroic because he hid his own pain to be there for his family and patients. My heart went out to him as I saw him put up a brave front concealing his suffering at the loss of his first-born child. The true character of a person is revealed when life throws him a blow of that nature. Dr. Sawhney did not let it break him and to this day proves to be an ideal son, husband and father. He's an upright member of the community, a man of integrity, and a true professional as a neurosurgeon. I ask for leniency in his sentencing. I humbly request that Dr. Sawhney not be incarcerated. The past two years have been very hard on him and his family, and has taken a toll on them, particularly his 96 yr. old mother.
Thank you for your consideration.
Vandana Marwaha
*"Yesterday I was clever, so I wanted to change the world. Today I am wise, so I am changing myself."* Rumi

Index Letter 7

| | |
|---|---|
| **From:** | Judgee Singh <judgee@gmail.com> |
| **Sent:** | Monday, January 9, 2023 12:40 PM |
| **To:** | McCaffrey, John F. |
| **Subject:** | Letter of Support |

<<< EXTERNAL EMAIL >>>

Judge Sara Lioi
John F Seiberling Federal Building & US Courthouse
Two South main Street, Room 526
Akron, Ohio 44308-1813

Dear Judge Lioi

I write this letter on behalf of my Brother - in - law Bhupinder Singh Sawhny.
My name is Gurpreet Singh, I live in Nassau County, New York. I have known Bhupinder ever since he married my sister in 1973. We are to celebrate their 50th Wedding Anniversary this year.

Bhupinder is one of the finest people Ihave ever known in my life. I am extremely fortunate that he is my brother- in - law. There have been countless times that he has come to my aid both Financially and Emotionally.

Besides being a superb Neurosurgeon, so much so that he has been asked to perform specific brain and spine operations in India several times to my direct knowledge. I have often brought medical reports of different persons that wanted to consult with him at various times in life. He has operated on my Uncle (Dad's Older Brother) when he was visiting from India and had no medical Insurance in the USA;It was unthinkable for him to charge my uncle for the surgery, so much so that because of the high regard that the hospital had for him, they waived all their fees. It is not only for the family that he does this, but it could be any uninsured patient or anyone that could not afford the cost of the Surgery, who came to consult him, wheather Family or not. He always felt it his moral duty to take care of them, providing them with samples of medications they needed,never charged them for any office consultations or surgeries. He often requested other physicians and hospitals to do the same.

In addition, his reputation in his profession is so good that he has been asked to teach at various medical institutions and classrooms both in the US and India.

Judge Lioi, I would like to inform you that, both his wife and mother are NOT in the best of health and  are completely 100% dependent on Bhupinder for all their driving and shopping needs. In fact, Bhupinder takes care of all their outside needs and activities, like Doctors Appointments, medicines pickup from the pharmacy; grocery shopping. In fact, your honor, he is the main caretaker of the Family, often preparing the meals, taking the dogs out for their walks and daily routines.

Your Honor, it is impossible to believe that Bhupinder can or could have conceived or committed the crime that he is accused of, as he is one of the most honest people that I have the privilege of ever knowing.

I would, therefore, request you to please be lenient on any sentence that you are considering imposing, keeping in mind that <u>any sentence</u> of incarceration of any kind, would cause untold hardship to his wife and mother.

Thank you for your consideration.

 yours restpectfully
Gurpreet Singh
917 714 6464

1

Index Letter 8

Vijay Khosla, PhD., P.E.
6530 Duneden Ave.
Solon, Ohio 44139
216-406-9288
vkhosla41@gmail.com

January 11, 2023

Judge Sara Lioi
John F. Seiberling Federal
    Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

Dear Judge Lioi:

I, and my wife, Archana, were introduced to Dr. Bhupinder Sawhny and his wife, Neeli, about 37 years ago at a social get-together at the residence of one of our very close friends. Over the years since then, this friendship has grown into a very close family relationship that includes Sawhny's children, parents, and even their extended families. Dr. Sawhny has been an outstanding member of the Indian community, very highly regarded, loved, and respected for his social demeanor, kindness, and helpful nature. He has never shied away from extending his helpful hand whenever called upon by anyone where his professional and social skills were the need of the hour. I, and my family have had a personal experience in 1994 when Dr. Sawhny's expertise was needed in the case of my younger brother-in-law who had come from India and was suffering from Peripheral Neuropathy. Dr. Sawhny got personally involved to help in arranging the much needed medical help to alleviate the continually increasing disabling impact of Peripheral Neuropathy on my brother-in-law's body. I, and my family, will be ever so thankful and indebted to Dr. Sawhny for his much-needed help.

I am humbly requesting your honor to be kind and not impose any form of incarceration to spare his family, and particularly his 97-year-old mother, of physical and mental anguish.

Sincerely,

Vijay Khosla

Index Letter 9

**Ishita Chadda**
991 Mori Ct.
Port Orange, FL 32127
(386) 235-6770
Ishitachadda@gmail.com


January 14, 2023


**Judge Sara Lioi**
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813


Dear Judge Lioi,

My name is Ishita Chadda and I am the first cousin of Jaspreet Sawhny, wife of
Dr. Bhupinder Sawhny. I have known Dr. Sawhny for 50 years as a loving,
well-respected, and honest member of our extended family. He has been an
exemplary family man, taking excellent care of his elderly parents, siblings, and
nieces and nephews, in addition to his own wife and three children. In fact, he
is still a caregiver to his 97-year-old mother, who lives in the same home as
him and his wife. Dr. Sawhny has suffered a great deal of tragedy in his
personal life, losing his oldest daughter as a young adult and witnessing his
father's slow decline after having multiple strokes. Despite his losses, he has
been a source of positivity and beacon of light in our family, as well as in his
professional life for his patients.

As a talented and revered neurosurgeon at the Cleveland Clinic, Dr. Sawhny
has had a long career of helping hundreds of patients in his local community.
He has also been a reliable wealth of knowledge to a number of his extended
family members who have needed his medical guidance. He has directly
assisted many of our mutual relatives, including an elderly uncle who was
visiting from India and developed very debilitating back pain during his stay
and required spinal surgery. Dr. Sawhny hosted our uncle at his home and
performed the surgery on him successfully, allowing him to be able to travel
back home to India after his recovery.

Not only has Dr. Sawhny generously cared for his own family, he has gone
above and beyond in his willingness to share his medical expertise and
resources with those that are not even directly related to him. This includes my
cousin in India, whose daughter was diagnosed with terminal brain cancer in
1996 at just seven years old. Upon my request for his help and guidance, Dr.
Sawhny and his wife arranged for my cousin and her daughter to come from
India in order to get the necessary surgery and treatment at the Cleveland

Clinic. They provided my cousin with the support she needed during a very difficult and frightening time.

Learning of Dr. Sawhny's recent investigation came as a shock to our entire family, as he is highly regarded as an honest and upstanding man. The past several months have been very stressful and trying for him and his wife, with whom I speak frequently. They have worked diligently to gather the necessary documents and records for this proceeding, even missing a family reunion and the wedding of their niece in California last fall. They are dedicated to providing the truth for this case and cooperating with all aspects of this investigation. Dr. Sawhny and his wife are God-fearing people and value honesty and integrity. I request that you please take into account this letter and my examples of Dr. Sawhny's benevolent and honorable character during your sentencing. I have nothing but the utmost respect for him and am confident that he deserves leniency.


Sincerely,

Ishita Chadda

Index Letter 10

Judge Sara Lioi

John F. Seiberling Federal Building & U.S. Courthouse

Two South Main Street, Room 526

Akron, Ohio 44308-1813

1/15/2023

Dear Judge Sara Lioi,

Wishing you a good day.

I am Pamella Kapoor and older sister of Dr. Sawhny, who is the youngest sibling of three. We siblings have had a very close bond right through our childhood and adult life with our respective families and children.

As Dr Sawhny grew older he kept setting higher goals for himself all through his life – school, medical college, professional and his personal life. Of upright morals and strong principles, honesty and truth are his strength and certitude. He has always maintained that his work is his meditation. So on the day he was incriminated his words were "The only thing I have to say for myself is that I do not lie."

Selfless and dedicated Dr Sawhny has always put his work before himself, with the well being of his patients at the top of the list. Kind and caring, Dr Sawhny is compassionate, big hearted and generous!

His patients are witness to his caring and kind nature, along with his colleagues, friends and family world over whose respect and regard he has earned. He only cared for his patients, money was not important to him. A person of high moral character, Dr Sawhny led by example. As a kid of ten years old he gave away his watch and blanket to the watchman of his boarding school as the watchman was not able to afford one. In school he was known to have helped and cared for other kids who felt unwell. Also when he was 8 years old he set up a makeshift veterinary clinic in the garage of our house where injured/wingless birds, street dogs and cats were given shelter and tended to most gently. These are only a few incidents that I recollect but there are many more. I have been wittness to some equally magnanimous stories told to me by his co-workers collegues and friends. There were only words of praise for him.

In conclusion, I would like to say that we as a family have been in a state of shock and disbelief. In my wildest dreams I could not have imagined that he of all people would go through such a shattering and devastating experience in his lifetime.

The last 3 years have been a nightmare. To see a man of his integrity, so good and empathetic has been traumatic for us, his wife, children, friends and his 97 year old mother who lives with him. She actually witnessed him being handcuffed and being taken away. Since then she has not recovered from the shock. The setback has made her very sick and is suffering from anxiety attacks. His wife, who has suffered the most, has been totally distraught and affected mentally. The children and us family have tried to put up a brave front. Financially it has been the toughest time for them living off the charity of others. All of us, family and friends and children have sent in funds to support the case. The Sawhny family has lived the last 4 years in fear and anxiety through the mental torture. For Dr. Sawhny to be without work, no earnings or savings, almost house bound have been very hard and difficult to take. I

am afraid for his health now as nothing could have harmed him more than the label of being a dishonest doctor.

My plea to you dear Judge Lioi is to ask for mercy in your sentencing. Please be lenient as I do firmly believe that Dr Sawhny should not be incarcerated. He is noble , truthful, honest, kind and of a very high moral character, who has only had the good of the community on his mind.

I appreciate your time to read this letter and plea.

Yours sincerely,

Pamella Sawhny

Index Letter 11

From,
Earl McDaniel III
3700 Hawley Ave
Los Angeles, California 90032

Date: 1/15/2023

To,
Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

Dear Judge Lioi,

I am writing this letter in support of my father-in-law, Bhupinder Sawhny. I have known Dr. Sawhny for over 20 years since being welcomed into the family in 2002. Over the years our relationship has grown, strengthened, and developed into a loving bond. I want to state that Dr. Sawhny has led his life in service of others and is an upstanding member of the community.

As a son-in-law I've witnessed Dr. Sawhny to be selfless, always ready to lend a hand or jump in and assist in other ways either physically or monetarily. He is a loving husband, father, and caregiver to the Sawhny family. When his brother needed help in raising his own family, it was Dr. Sawhny that took in his two nieces and raised them as his own children.

The toll this trial has taken on the entire family is indescribable. It has been over three years of financial turmoil, sadness, and anxiety for everyone, but particularly for his 97-year-old mother whom the Sawhny's have taken care of since their wedding day. We have missed family milestones such as birthdays, anniversaries, and family vacations due to these difficult circumstances.

I would humbly ask that Dr. Sawhny not be sentenced to any days of incarceration and spend the rest of his probation time at in-home confinement. Recently Dr. Sawhny has shown a determined and positive attitude in overcoming his mistakes and I believe that severe punishment will be detrimental to us as he is the family's sole source of income and support. His loss of income has severely decimated the family, who now must rely on the generosity of family members to make ends meet.

Thank you for taking the time to read this letter and I hope you will consider my request.

Sincerely,

Earl McDaniel III

Index Letter 12

Roshni Sawhny
3535 Rolling Hills Drive
Pepper Pike, Ohio, 44124


January 15, 2023


Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

Dear Judge Lioi,

Bhupinder Sawhny, my father-in-law or Pop, is a remarkable human being. I'm sure you are in the
process of reading several letters stating what a wonderful man he is and he truly is all the things you are
reading. I have had the joy of getting to know him in a different light than anyone else, as a
daughter-in-law.

One can never replace your own father, but Pop is a close second. He has been there for me when my own
father has not been able to. Pop was arrested very shortly after I gave birth to our first child, Sitara. My
husband and I rushed to Cleveland, with Sitara in tow, to figure out what to do. Despite everything that
was happening with his life, Pop would wake up in the morning to take Sitara, so I could sleep for a few
hours. He has supported me, in my journey as a mother, in a way that has left me speechless. He has been
there to reassure me and pick me up when I was feeling, as if I was failing, as a mother.

When we had our second child, Jahaan, and we moved to Cleveland, it was Pop who was always there for
me and the kids. When Jahaan was about six months old, I came down with a severe case of mastitis and
Pop was there for the next three days, non-stop helping me and the kids. Since moving to Cleveland, he
has been our rock and has stood beside my husband and I, as we have taken our first steps in our journey
as parents.

As a mother, you want to make sure your children have incredible role models in their lives. Having a
daughter truly makes you think about the male figures around her, because it's from them she is learning
how to be treated. Having a son, the male figures must teach him how to treat others. Second to my
husband, my father-in-law is by far the best person for this critical role in my children's lives. He
embodies all the characteristics a mother would want her children to embody: kind, caring, gentle,
assertive but respectful and honest,  just to name a few.

Pop has become an irreplaceable person in our lives and watching him go through this journey of being
arrested has been heartbreaking for all of us. Even though he has had this case looming over his head, he
has never let him affect how he is with me and the children. He always comes over with a smile on his
face and excitement to see us. I am in awe of how he has handled himself these past three years.

This letter is just a glimpse into the man Bhupinder Sawhny is, as a father-in-law and grandfather. He means much more than just the words written. I humbly request that his sentencing does not include incarceration, as I greatly depend on him, even more so now that I am expecting our third child in April. Thank you for taking the time to read this letter and for your consideration.

Kind regards,

Roshni Sawhny

Index Letter 13

January 16, 2023

From:

Srinath Prasad Rajavasireddi
1355 1st Avenue, #12
New York, NY 10021

To:

Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

Dear Judge Lioi,

I am writing this letter to you to let you know everything I know about Dr. Bhupinder Sawhny.

I have had the pleasure of knowing Dr. Sawhny since 2001. I met him through my wife, Taniya Kapoor who is his niece. In 2000, I suddenly became a widower when my first wife died, leaving me to be a single father to my two sons Neal and Jay, aged 3 and 5. When I first met Taniya in New York and when we decided to work on our lives together, she wanted me to meet her family. Family to her meant "Cleveland" and Dr. Sawhny's home. So, in 2001, she brought me and my sons to Cleveland to meet Dr. Sawhny and his parents, (her grandparents). From the first moment Dr. Sawhny met us I knew we were blessed to be welcomed into a wonderful family. They were a complete family and they all had nick names! Nannaji and Nanniji were the grandparents, Nillimami (Mrs. Sawhny) was our Aunt and Baby Mamma (Dr. Sawhny), was our Uncle!! We would visit them as much as we could from New York. They became grand parents and great grand parents to both my sons.

Dr. Sawhny was a symbol of pure affection and love. His selflessness to all his family was legendary. We spent many holidays like Thanksgiving, Christmas, and

New Years with him in his home, enjoying his cooking and his beyond generous hospitality. Every trip was so special. We all learnt so much about what family was supposed to be like from him. All of us wanted to be "like" Baby Mamma when we grew up!! That was always the general feeling every time we left Cleveland.

These past few years have been so hard on Dr. Sawhny and the rest of his family. Whatever the circumstances, his unwavering love for his mother, Nanniji continued to shine. She just celebrated her 97th birthday in Cleveland. Being able to closely witness this bond between mother and son has been one of the highlights of our lives. We have never experienced such emotion and it has taught us such valuable life lessons with regards to taking care of the elderly in our family. This is all because of Dr. Sawhny.

Being a close family member and spending so much time in Cleveland over the past couple of decades, I have personally been able to observe Dr. Sawhny's unwavering love for his profession. He is a true healer. You can see the empathy that he has for his patients in his eyes. We have all seen his early morning departures to do his rounds with his patients, with unshakable professionalism despite any weather conditions. His work ethic has been an inspiration for all of us. He has shown it to us by his actions not words.

Dear Judge Lioi, as you decide to sentence Dr. Sawhny, I hope you will have mercy and not incarcerate him for even a single day. Please do not punish all of us by taking away the "Light" of our lives. Afterall, we all still want to be "like" Baby Mamma when we grow up.


Best regards,

Srinath Prasad Rajavasireddi "Shree"

Index Letter 14

| | |
|---|---|
| **From:** | Joneja, Jaspreet <Jjoneja@northwell.edu> |
| **Sent:** | Monday, January 16, 2023 6:56 PM |
| **To:** | McCaffrey, John F. |
| **Subject:** | Dr Bhupinder Sawhny |

<<< EXTERNAL EMAIL >>>

Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street
Room 526
Akron, Ohio 44308-1813

Dear Judge Lioi,

My name is Jaspreet Joneja, I am a practicing Board Certified Urologist with Northwell Health in Huntington, NY.

I am married to Dr Bhupinder Sawhny's wife's niece Inesha Singh Joneja and have known Dr Sawhny, 'Baby Uncle' as we dearly call him for more than 20 years.

He has been a great role model for me in so many aspects. Like me he is a foreign medical graduate and through hard work and perseverance was able to get trained at Cleveland Clinic in the highly competitive field of Neurosurgery. Despite having a successful Private practice for a number of years, he still found the time to take care of his friends and family, always available to help out in any which way.

I have always looked up to him and he has been a constant source of support for me in my struggling years, always giving me sound and morally ethical advice.

I would not say that I understand all the specifics of this case but would definitely request all the leniency possible in his sentencing as he has led exemplarily the major part of his professional life and has still so much more to offer to his friends, family, community and the medical field.

Sincerely,

Jaspreet Joneja, MD
Assistant Professor, Urology
Northwell Health

The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

Index Letter 15

Saiba Singh
2185 Station Village Way, #2220
San Diego, CA 92108
saibzsingh@gmail.com

Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

January 16, 2023

**Re: Letter of Support for Dr. Bhupinder Sawhny**

Dear Judge Lioi,

My name is Saiba Singh, and I am Bhupinder Sawhny's (aka, Baby Uncle) niece. For the last 28 years, Baby Uncle has been a loving, compassionate, and caring father figure in my life. After losing my own father at a young age (13 years old, to be exact), I looked to my uncles and older cousins to fill the void I was experiencing. Baby Uncle is similar to my father in many ways – from pursuing a career in medicine to his sense of humor to his love for his family.

Baby Uncle consistently checked in with me and inquired about my general emotional state, school life, and hobbies, and always makes the effort to invite me, my mother, and my sister to spend the holidays in Cleveland. Though we do not speak daily, the consistent quality, sincerity, and warmth of conversation throughout my life gives me full confidence that Baby Uncle would be there for me in my time of need. We have gone through some of the most difficult, heart-breaking times of our lives side by side -- from the passing of my dear cousin and his daughter, Nerissa (lovingly referred to as Joti), to the passing of my father. Though those losses were equally tough on us in different capacities, he made it a point to put his emotions aside and make sure me and his other family members felt comfort from him. It is no easy feat to caretake for others while you, yourself, are grieving, but Baby Uncle did it anyway.

To know this side of Baby Uncle has made it that much more difficult to experience his absence in heart-growing moments -- like my sister's wedding that occurred during these proceedings. I think it is important to note that he still made it a point to participate via Zoom to ensure she felt his support, despite the turmoil in his own life. I ask that you be lenient in your sentencing, and consider the possibility that the supporting, loving, and emotionally intelligent traits are in fact what makes up Baby Uncle's character. I have witnessed them as such through my own experiences, but also in observing his career progression. He has an underlying desire to help those around him in whatever capacity he can, and has demonstrated his expertise time and time again. In my opinion, taking away Baby Uncle's license would do more harm than good, as it would remove a competent, kind, and loyal medical professional from the world. In addition to considering my experience, I also ask that you consider what a license revocation might mean for patients counting on Baby Uncle for help, and what that ripple effect would look like.

Thank you for taking the time to consider this letter.

Saiba Singh

Index Letter 16

Pekhna Singh-Donvan
1827 Babbe Street
Oakley, CA 94561
pekhnasingh88@gmail.com

Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

January 16, 2023

**Re: Letter of Support for Dr. Bhupinder Sawhny**

Dear Judge Lioi,

My name is Pekhna Singh-Donovan, I am a practicing lawyer in California, and I am Bhupinder Sawhny's niece. I have known him my entire life – thirty-four years – and have lovingly referred to him as "Baby Uncle" throughout.

The most impactful experience I have had with Baby Uncle has taken place over the last fourteen years. My father passed away suddenly (Baby Uncle's brother-in-law), and Baby Uncle and family were on the first flight to California to support and comfort us. His support, love, and visits have never wavered and continue to this day. For example, though Baby Uncle and family could not travel to California for my wedding this past September, and through they are going through a very difficult time with this trial, he participated in the family dance via Zoom and helped prepare a speech that was read by his daughter at my reception. He is always focused on making other people feel loved, special, and important.

As Baby Uncle and his family navigate this trial, I have seen the same emotional stability, care, and consideration on display. The family has slimmed down their expenses, pooled resources, borrowed money from friends and family, worked additional jobs, and even purchased a printer to reduce costs associated with documents and discovery. Because I have a legal background, Baby Uncle has kept me informed throughout this case's development. He has never made any comments critical of the investigation, trial, or process. Instead, Baby Uncle and family have been steadfastly focused on a swift and stable recovery post-trial.

As such, I respectfully ask the court not to impose a sentence of incarceration of any kind, and to allow Baby Uncle to retain his medical license so he and his family can work to rebuild their lives as quickly as possible.

Thank you for your consideration.

Sincerely,

Pekhna Singh-Donovan

Index Letter 17

Anuradha Singh
3560 Ovella Way
Pleasanton, CA 94566

Judge Sara Lioi
John F. Seiberling Federal Building & U.S. Courthouse
Two South Main Street, Room 526
Akron, Ohio 44308-1813

January 16, 2023

**Re: Letter of Support for Dr. Bhupinder Sawhny**

Dear Judge Lioi,

My name is Anuradha Singh, and I am Bhupinder Sawhney's sister-in-law. I have now known Bhupinder Sawhney for over 30 years and my relationship to him is that of an older brother I fondly call him Baby Bhaiya. I always had a good relationship with Baby Bhaiya he is a loving, helpful, family-oriented man.

I must mention that Bhupinder Sawhney has been a big support to me specially after the loss of my husband, he has shown me the real meaning of an older brother by always being there. His compassion, his concern for my wellbeing and for my kids this one constant has not changed. Even when his own life was in turmoil, he stood tall and strong for me and my family. His compassion his love and respect for family has always been strong. This to me has always spoken highly of his character. I have always respected him. I strongly believe Bhupinder Sawhney is a man of compassion, integrity and honesty. I know for a fact that he is more of a giving person than a person who takes advantage of anyone. I used to often reach out to him if my children ever needed anything in their younger years and he was always willing to advise never ever making us feel like we are asking for a favor he always made us feel that is was our right to ask him the comfort was automatic that is a skill of selfless people. He is well respected by family and friends and the community he has served and lived in, not just as good human being but also a loving helpful man who goes the extra mile to do the right thing.

I do hope you will see him through all the lenses that are presented to you in your final decision making.

Respectfully,

Anuradha Singh

Index Letter 18

Dear Judge Lioi,

I, Vinod Nagpal, a close friend of Dr. Bhupinder Sawhney for the over 3 decades. I want to express my gratitude in writing this note for Dr. Sawney.

My wife and I know Dr. Sawhney's family for over 3 decades. Dr. Sawhney's family and us lived in the same suburb, Strongsville, of Cleveland for 10 years or so. We have known Dr. Sawhney's entire family including his parent, children, brother and sister. Also, we share same social circle of friends.

Dr Sawhney pays individual and undivided attention to each and every friend making everyone feel that that they are important to him.

Dr. Sawhney is really kind and caring, and helpful individual. He unhesitatingly offered help and treated my mother-in-law Janak Sachdeva) multiple times when she needed medical assistance in emergency at Sourhwest General Hospital, Middleburg Heights. He spared time out of his personal time when he was fully booked to see his patients. On the top of it he, every time, followed up with a phone call or sometimes made a personal visit to check on her health status. That made my mother-in-law feel extremely comfortable and expedited her recovery. My mother-in-law had multiple health issues.

Dr. Sawhney is not only a great doctor, he is a great individual.

Sincerely,

Vinod Nagpal

Index Letter 19

# RAJNISH KAPOOR

Avenida Josep Tarradellas 147 1-1 08029 Barcelona Spain
mayurabcn@gmail.com   +34 669000592

Judge Sara Lioi

John F. Seiberling Federal Building & U.S. Courthouse

Two South Main Street, Room 526

Akron, Ohio 44308-1813


Dear Judge Lioi

I am writing this letter of support on behalf of Dr. Bhupinder Sawhny, my uncle.  My mothers younger brother.  A caring, family man of high moral character and unconditional generosity.   A kind man who through his actions and words goes out of his way for the people around him.

From age 11 onwards, we came from Hong Kong and spent nearly every summer with Dr Sawhny and his family.  It was a large household and Dr. Sawhny was the only breadwinner.  The household consisted of my grandparents, Dr. Sawhny's family and the family of his brother.  With the addition of us four from Hong Kong the house was a noisy bustling place.  But  regardless of the number of people, we always had all we could want for and more.  Our welcome to his home was unconditional and the memories of our summers remain wonderful. From our tennis camps, trips to Cedar Point and Geauga Lake to the celebration of my siblings birthdays every August.  We were made to feel special and cared for during each and every visit, where no request made was too hard to grant.

# RAJNISH KAPOOR

Avenida Josep Tarradellas 147 1-1 08029 Barcelona Spain
mayurabcn@gmail.com  +34 669000592

When I was allowed to get a car of my own, financing and insurance was difficult for someone so young, especially one whose parents lived abroad.  It was Dr. Sawhny who took the situation under his wing and purchased the car under his name taking on all the risk and uncertainty that went along with it.

As long as I have known him, he has always made himself available for any medical question or emergency, whether within his specialty as neurosurgeon or simply for a second opinion. He has always been generous with his time for consultations for friends, family and most notably for people he doesn't know, recommended through friends and family – without expecting anything in return.

His discipline and dedication to his profession is enviable.  Waking up before dawn to make the long journey to work and never blinking an eyelid or being upset if he was called to attend a patient in an emergency at an odd hour of the night.   It was part of his job, his life and he assumed this responsibility as his own.

Over the years, I have visited Dr. Sawhny at his work and vividly remember the positive energy of his office, the genuineness of his staff (along with their appreciation of him as a boss and a person) and the relationships he had with his peers.  And although I never met any of his patients personally, I know from his stories over the years, how fond they were of him and more importantly, how genuine he was in his care and interest in his patients, their problems and outcomes.

# RAJNISH KAPOOR

Avenida Josep Tarradellas 147 1-1 08029 Barcelona Spain
mayurabcn@gmail.com  +34 669000592

From the time he made the USA his home he has always been one of its most loyal servants. Holding the country, its culture and its institutions always in the highest regard. Even through this unfortunate period in his life, he has never doubted the system of justice in the USA and has always held tight that justice will be served.

The past few years have been a most unfortunate period in the life and career of Dr. Sawhny, and one which all that know and care about him wish will be put to past. It may be too late for him to return to practice at this late stage of his life, but it would be rewarding and just to see the normality of the life he once had returned to him. To see him once again be proud of his accomplishments, hold his head high and to allow him to live his remaining years with the dignity with which he continues to carry till this day.

With this, and all of the above in mind, I request you to please apply the utmost leniency at your disposal in your sentencing of a most special person in my life.

Thank you,

Rajnish Kapoor